UNITED STATES of America, Appellee,

v.

Daniel A. BRUGMAN, Appellant.

UNITED STATES of America, Appellee,

v.

Benjamin A. KING, a/k/a Bennie,
Appellant.

Nos. 79–5128, 79–5129.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1981.

Decided May 15, 1981.

---

Milton E. Grusmark, Miami, Fla., for appellant in No. 79–5128.

Fred D. Clark, Charleston, W. Va., for appellant in No. 79–5129.

E. Leslie Hoffman, III, Asst. U.S. Atty., Charleston, W. Va. (Robert B. King, U.S. Atty., Wayne A. Rich, Jr., Asst. U.S. Atty., Charleston, W. Va., on brief), for appellee.

Before MURNAGHAN and ERVIN, Circuit Judges and ROBERT R. MERHIGE, Jr., United States District Judge, sitting by designation.

MERHIGE, District Judge.

Appellants, and seven other individuals, were indicted for numerous violations relating to drug trafficking activities.

Prior to trial, six of their co-defendants, pursuant to plea bargains with the government, entered pleas of guilty, and appellants, along with one Wesley Dean Kinison, proceeded to trial by jury.

After five days of trial, Kinison pleaded guilty to charges in two counts of the indictment, in accord with a plea agreement with the government which provided for Kinison to testify, as he did, on behalf of

the government as to his involvement and that of his co-defendants, Brugman and King, in the drug trafficking activities which formed the basis of the indictment.

Brugman was convicted of each of the counts with which he was charged, encompassing conspiracy to distribute cocaine, a controlled substance, interstate travel in aid of a racketeering enterprise, and with possession of cocaine with intent to distribute.

King likewise was convicted of each of the counts with which he was charged, one being for conspiracy to distribute cocaine, a controlled substance, and three for possession of cocaine with intent to distribute.

Each of the appellants seeks reversal for alleged errors on the part of the trial court in denying a motion for a severance of the defendants, the admission in evidence of so-called similar acts, and finally violations of appellants' Sixth Amendment rights to effective assistance of counsel in permitting co-defendant Kinison to testify on the government's behalf; after having allegedly intruded upon appellants' attorney/client relationship.

While no contention of insufficiency of evidence is made, a brief summary is necessary in order to place the respective contentions in proper context.

The evidence revealed a wide ranging conspiracy between the parties named in the indictment which operated from March to December of 1978. The evidence also revealed that at the top of this vertically organized conspiracy was one Michael Sampson, who resided in the State of Florida, and who was revealed to be the principal supplier of cocaine. Immediately beneath Sampson were three of the named defendants, including appellant Brugman and Kinison, who, in support of the conspiracy to distribute and possess cocaine in the State of West Virginia, traveled in interstate commerce and engaged in interstate telephone conversations.

The role of Donald Bain, a named defendant, was to engage drug peddlers in the Kanawha/Charleston area of West Virginia. Bain utilized interstate telephone communications in his efforts and distributed the cocaine brought into West Virginia by Brugman and another defendant, Halstead, to local peddlers, such as appellant King, who in turn was assisted by two other individuals, Culpepper and Wright, who were also named defendants.

The evidence in support of the charges against each of the named defendants was, to say the least, overwhelming.

The Government, by utilizing those defendants who chose to plead guilty, as well as undercover agents, entangled the present appellants and their co-defendant, Kinison, in a strong and sturdy net which amply supports the respective convictions.

Concluding, for the reasons which follow, that the trial court scrupulously protected the rights of both Brugman and King from arraignment to conviction, we affirm.

Appellants first complain of the trial court's denial of their respective motions for severance.

Rule 8(b), F.R.Crim.P., provides:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

■ Misjoinder is of course prejudicial per se. *McElroy v. United States*, 164 U.S. 76, 81, 17 S.Ct. 31, 33, 41, L.Ed. 355 (1896); *Ingram v. United States*, 272 F.2d 567, 570–71 (4th Cir. 1959), *United States v. Kaplan*, 588 F.2d 71, 74 (4th Cir. 1978).

Barring special circumstances, individuals indicted together should be tried together. *United States v. Mandel*, 591 F.2d 1347 (4th Cir. 1976); *United States v. Mankins*, 497 F.2d 1265 (4th Cir. 1974); *United States v. Shuford*, 454 F.2d 772 (4th Cir. 1971).

■ The test for joinder under Rule 8(b) is whether defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions".

The fact that each incident of participation may not have constituted a crime on the part of a defendant is of no consequence. "Participation" in the same series of transactions as referred to in Rule 8(b) does not require "participation" in each transaction of the series. *See Haggard v. United States*, 369 F.2d 968 (8th Cir. 1966).

It is to be kept in mind that the indictment under which these defendants were convicted, accused each of the nine named defendants with conspiracy, and alleged in support thereof the commission of more than sixty overt acts. The various overt acts, in turn, were alleged to a great extent, to constitute the several substantive charges against the named defendants. *See United States v. Hargrove*, 647 F.2d 411 (4th Cir. 1981).

Since we find joinder under Rule 8(b) proper, the respective motions for severance are to be considered under F.R.Crim.P. 14. Rule 14, F.R.Crim.P. provides that motions for severance are directed to the sound discretion of the trial court and will not be disturbed except where a defendant did not receive a fair trial; in short, in those cases where by virtue of joinder a "miscarriage of justice" has occurred. *United States v. Santoni*, 585 F.2d 667, 674 (4th Cir. 1978). The movant must show something more than merely a better chance of acquittal and "must overcome the burden imposed by a stringent standard of review". *United States v. Jamar*, 561 F.2d 1103, 1106 (4th Cir. 1977); *United States v. Santoni, supra*, at 674 (4th Cir. 1978).

■ Here, appellants contend that the trial court abused its discretion in denying them severance, arguing that their co-defendant Kinison was named in eighteen counts, while Brugman was named in three, and King in four.

While much of the evidence adduced in the first four days of trial went to the guilt of defendant Kinison in regard to the eighteen counts with which he was charged, that same evidence went to support many of the more than sixty alleged overt acts charged in the conspiracy in which these defendants, as well as Kinison, engaged. It

is to be noted, as well, that one or the other of appellants was implicated in at least seventeen of the charged overt acts supporting the conspiracy count.

This Court has heretofore expressed its view that "[s]everance will not be granted when the claim is based on the disparity of evidence adduced against individual defendants without a strong showing of prejudice, . . . ." *United States v. Mandel, supra*, at 1371; *United States v. Hargrove, supra*; *United States v. McGruder*, 514 F.2d 1288, 1290 (5th Cir. 1979).

The language of Rule 8(b) assumes certain evidence may be admitted against one defendant not necessarily applicable to another. *Daley v. United States*, 231 F.2d 123, 125 (1st Cir. 1956). *See also United States v. Miller*, 340 F.2d 421, 423 (4th Cir. 1965); *United States v. Santoni*, 585 F.2d 667, 674 (4th Cir. 1978). A studied consideration of the transcript of the trial satisfies us that appellants were in no manner legally prejudiced by the denial of their respective motions for severance.

Appellants next contend that the trial court erroneously admitted testimony relating to certain marijuana and hashish transactions, or proposed transactions, between and involving government witnesses and the appellants, when neither appellant was charged with having dealt in either marijuana or hashish.

The issue first arose during the testimony of Charles Culpepper, a named defendant who had pled guilty prior to trial, who was called as a witness on behalf of the government.

Culpepper's testimony was directed to certain activities of the defendant Kinison that involved the sale of marijuana, hashish and cocaine. Upon objection by Kinison's then trial counsel, the court instructed the jury that the evidence was to be considered as to Kinison only, and then only "insofar as in your opinion it has a bearing or may go to show the opportunity, preparation, plan, intent, motive, knowledge or identity, as well as absence of mistake or accident on the part of the defendant Kinison, if any, in

connection with the offense or offenses which are charged against him in the indictment.

It serves no other purpose whatever, but to caution you again that the defendant Kinison is not on trial with respect to either the Columbian marijuana or hashish."

Thereafter, excluding certain evidence relating to a transaction involving only marijuana, the trial court noted, "Insofar as reference to marijuana and hashish . . . where it accompanies a shipment of cocaine, I see no particular problem with that . . . it is so interwoven that it naturally comes as a part of the offense, it comes as a part in companion to the cocaine shipments that are the subject of the indictment." Upon Kinison pleading guilty, the jury was instructed to disregard all evidence in marijuana and hashish transactions involving Kinison.

Thereafter, the matter arose again directly involving appellant Brugman, when a government witness testified in direct examination, as follows:

Q. How did you become familiar with Mr. Brugman?

A. I think the first time I met Mr. Brugman was in New York.

Q. On what occasion did you meet him in New York?

A. I was instructed to go to New York to get some marijuana.

After a side-bar conference, the Court instructed the jury as follows:

Let me caution you that the reference to marijuana in this instance once again has nothing to do with the charges in this case as such, and in this instance it doesn't even rise to the level of a so-called similar act. The Court simply directs that you totally disregard that reference and we'll go on from there.

Several other instances of similar testimony by the same witness occurred when he testified that he saw Brugman in Florida obtaining cocaine and marijuana. Further testimony was elicited from another witness to the effect that Kinison received marijuana brought to Charleston by Brugman which he was selling at $350 a pound.

In addition to the foregoing, Bain, a co-conspirator, testified as to a discussion which took place at appellant King's home in reference to the quality of cocaine, marijuana, and hashish, which Kinison had brought there. He further testified in reference to the same discussion that King purchased some of the hashish and "indicated that he would have to get hold of a friend of his concerning the purchase of cocaine". Prior to that testimony having been offered, the Court once again reminded the jury that the defendants were not on trial for any offense with respect to marijuana or hashish, and that such testimony was offered solely for the purpose of such value, "if any, as it may have on those same limited matters having to do with opportunity, preparation, plan, motive, intent, absence of mistake, and the like." Similar act evidence, accompanied by appropriate limiting instructions, as the trial court gave in the instant case, is admissible.

■ A review of the record reflects that with the one exception of the testimony of the witness who stated he "was instructed to go to New York to get some marijuana", referred to *supra*, the references to drugs other than cocaine were made in association with transactions involving cocaine.

We are satisfied that the trial court committed no error in admitting the introduction of the testimony heretofore referred to.

Rule 404(b) of the Federal Rules of Evidence provides,

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Here, each of the defendants was charged with conspiring to deal in the distribution of cocaine. With the one exception, to which the Court has already made reference, there was a link between the testimo-

ny complained of and the charged conspiracy.

■ Even if it be concluded that the complained of evidence constituted similar act evidence, unassociated with the charge of distributing cocaine, it must be borne in mind that wide discretion is invested in the trial judge to balance the possible prejudice to a defendant from the revelation of unrelated crimes against the probative force of the evidence to support the charges in the indictment. *United States v. Mastrototaro*, 455 F.2d 802 (4th Cir. 1972). *See also United States v. Samuel*, 431 F.2d 610, 612 (4th Cir. 1970).

Not unlike *Mastrototaro, supra*, the bulk of the complained of testimony dealt with the dealings between the defendants in reference to the crimes with which they were charged. The reference to drugs, other than cocaine, was generally a part and parcel of conversations, the essence of which was the sale of cocaine. However, unlike *Mastrototaro*, this is not a borderline case. The government in the instant case established a sufficiently strong link between the testimony complained of and the elements of the several charges which the appellants faced.

In light of the overwhelming evidence as to the guilt of the respective defendants, there was little danger of undue prejudice outweighing the probative value of the evidence adduced.

The final issue with which we are faced is whether the fact that the defendant Kinison attended a joint meeting among defense counsel and their respective clients during the course of the trial, and thereafter entered a guilty plea and testified against the appellants, deprived the appellants of their right to due process of law by the effective assistance of counsel guaranteed by the Fifth and Sixth Amendments to the Constitution of the United States.

On February 22, 1979, a joint meeting among defense counsel and their clients, including Kinison, who was then an active defendant, was held. During the meeting, defendant King denied knowing Kinison and discussions were held concerning a drug transaction which was the subject of one count of the indictment.

The claimed violation is premised upon purported intrusion into the defendants' attorney/client relationship. We conclude that there was no intrusion by the government pertaining to the defendants' attorney/client relationship.

Unlike the cases relied upon by appellants, the attorney/client relationship here was neither invaded by government eavesdropping nor by a government informant masquerading as a codefendant.[1] The case before us involves one of several defendants who determined that his interest was best served by pleading guilty and cooperating with the government.

The only reference made by Kinison, when he testified, as to the discussion between him, appellants, and their respective counsel, was to the effect that defendant King at that time stated that he didn't know Kinison. Except for that single incident, none of the government's evidence was obtained as a consequence of Kinison's having participated in the meeting between his codefendants, and their counsel. Additionally, Kinison's presence at that or other meetings with Brugman, King, and their respective counsel, was not prompted by

1. Defendants cite the following four cases, each of which involved deliberate intrusion by the government into a defendant's confidential communications with his or her counsel.

*United States v. Levy*, 577 F.2d 200 (3d Cir. 1978), a case wherein a co-defendant was at time of arrest recruited by government agents to act as an informer and disclose defense strategies. Defendants also cite *Coplon v. United States*, 191 F.2d 749 (D.C.Cir.1950), wherein government agents monitored telephonic communications between the defendant and her counsel both prior to and during trial. The third case they cite is *United States v. Peters*, 468 F.Supp. 364 (S.D.Fla.1979). In *Peters*, government agents and the prosecution listened to tape recordings of conversations between defendant and their attorneys involving defense strategy, and finally, they cite *Caldwell v. United States*, 205 F.2d 879 (D.C.Cir.1953). In *Caldwell*, the government retained a defense assistant who participated in defense meetings and reported the substance of same to the government.

any action on the part of the government. Kinison's testimony against Brugman and King was based upon his own knowledge of the facts and his involvement with these appellants.

■ The essence of the Sixth Amendment right to effective assistance of counsel is, indeed, privacy of communication with counsel. *Glasser v. United States*, 315 U.S. 60, 62, 62 S.Ct. 457, 461, 86 L.Ed. 680 (1942); *United States v. Rosner*, 485 F.2d 1213, 1224 (2d Cir. 1973).

We have been cited to no authorities supporting a *per se* rule that whenever conversations with counsel are overheard the Sixth Amendment is violated. Indeed, the Supreme Court of the United States has rejected any such suggestion. *See Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).

■ In determining whether there has been an invasion such as to be violative of the Sixth Amendment right to effective assistance of counsel, four factors must be considered. They include: (1) whether the presence of the informant was purposely caused by the government in order to garner confidential, privileged information, or whether the presence of the informant was a result of other inadvertent occurrences; (2) whether the government obtained, directly or indirectly, any evidence which was used at trial as a result of the informant's intrusion; (3) whether any other information gained by the informant's intrusion was used in any other manner to the substantial detriment of the defendant; and finally, (4) whether the details about trial preparation were learned by the government. *See Weatherford, supra*, at 554, 97 S.Ct. at 843. Applying these principles to the instant case effectively rejects appellants' contention. First, Kinison's presence at the strategy meetings with Brugman, King and their respective attorneys was neither induced nor encouraged by the government. Second, excepting for testifying as to King's denial of the acquaintanceship with him,[2] Kinison's testimony was based upon his own extensive knowledge of the facts of his involvement with the defendants. Third, none of the information garnered by Kinison in meetings with the defendants and their counsel, was used in any "other way" to the "substantial detriment" of defendants. Finally, there is nothing to support the conclusion that the details about trial preparation were learned by the government. The Constitutional barrier is raised only when the Government is a party, in some manner, to the alleged invasion. *United States v. Rosner*, 485 F.2d 1213, 1226 (2d Cir. 1973). Here the government was neither a party to, nor a recipient of, any matters prejudicial to the appellants.

A more succinct answer to appellants' contentions is that Kinison was not a government agent, and indeed, there was no constitutional restraint on his ultimately divulging whatever he had learned. *See United States v. Rosner*, 485 F.2d 1213 (2d Cir. 1973).

Our conclusion is not to be deemed a *per se* rule that it is only the intervention of government agents and their subsequent actions which will warrant a conclusion of violations of a defendant's Fifth and Sixth Amendment rights under the constitution. Under the facts of the instant case, which so clearly demonstrate that the appellants were in no manner prejudiced by the fact that Kinison met with them and their counsel at a time that discussions were engaged in regarding what anticipated witnesses might testify to, and thereafter informed the government that one of appellants denied any acquaintanceship with him, is too slim a reed to warrant further discussion.

Appellants' contention that they have been denied due process of law under the Fifth Amendment to the constitution is, of necessity, premised on the alleged invasion of appellants' Sixth Amendment rights, and having concluded that no such invasion occurred, that contention must fail.

There is always imposed upon the government a duty under the due process clause to

2. *See* trial transcript, p. 1171.

insure that criminal trials are fair. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1973).

A fair trial in a fair tribunal is a basic requirement of due process, and this the appellants received. *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *United States v. Navarro-Flores,* 628 F.2d 1178 (9th Cir. 1980).

WE AFFIRM.