887 F.2d 1081
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Norman HENSON, aka Hun Bun, Defendant-Appellant.
 No. 88-5584.
 United States Court of Appeals, Fourth Circuit.
 Submitted: July 6, 1989.
Decided: Sept. 29, 1989.
Rehearing and Rehearing In Banc Denied Nov. 8, 1989.
 
 Howard L. Cardin, Mark L. Gitomer, Cardin & Gitomer, P.A., for appellant.
 Breckenridge L. Willcox, United States Attorney, Katharine J. Armentrout, Assistant United States Attorney, Quincie Hopkins, Third Year Law Student/Law Clerk, for appellee.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant was convicted after a jury trial in April 1979 of conspiracy to distribute or to possess with intent to distribute narcotics in violation of 21 U.S.C. Sec. 841(a)(1). See 21 U.S.C. Sec. 846. He failed to appear for sentencing, and a bench warrant was issued in July 1979. The bench warrant was executed in March 1988 and defendant returned for sentencing; in May 1988 the district court sentenced him to twenty years imprisonment. Defendant now appeals errors allegedly committed during the 1979 trial. We affirm.
 
 
 2
 Defendant, identified as a supplier of "large quantities of heroin and cocaine," was charged along with sixteen others in a thirty-five count drug conspiracy indictment. Trial commenced and voir dire was conducted. The voir dire was not transcribed, but a transcript of the proceedings immediately following indicates that one of the defense attorneys objected to the government's use of peremptory challenges to strike two blacks from the panel. The court rejected the challenge to the use of peremptory strikes, noting that it did not find any "racial overtones" in the use of strikes. Joint Appendix at 101.
 
 
 3
 Defendant's attorney also moved for severance before trial, a motion he repeated several times during the trial. Defendant argued he would be prejudiced by the presentation of evidence admissible only against other defendants, especially since defendant was named in only the one conspiracy count. On each occasion, the court rejected the motion to sever.
 
 
 4
 The evidence presented against defendant during the trial included testimony from one witness and several wiretapped conversations. A co-conspirator, testifying pursuant to a plea agreement, testified that she traveled to New York with the principal defendant, Walter Webster, who obtained a large quantity of narcotics. While Webster was sifting and dividing the drugs, defendant arrived. Webster was upset because defendant had not brought any "glassine bags," ordinary plastic sandwich bags which can be used to package drugs, and they would have to go to Brooklyn, where defendant lived, to get the bags. The principal defendant traveled to defendant's apartment early the next morning and obtained the bags. Id. at 173-79.
 
 
 5
 Three wiretapped telephone conversations were introduced that also provided evidence against defendant. In a conversation between two co-defendants, defendant was identified as a source of "iron," which testimony indicated was a term for quinine, a cutting agent for drugs. Id. at 271, 128. In a second conversation, defendant told principal defendant Webster that he had some heroin ("Rocky"). A government witness interpreting the call testified that defendant indicated he was going to bring the heroin over for the principal defendant to sample. Id. at 210. In the third conversation, Webster asks defendant whether he has any cocaine ("lady"); defendant indicates that he does, but is having difficulty reaching the principal defendant. Id. at 285-86. Other phone calls indicate that Webster initially had difficulty contacting defendant, and after they made contact document defendant's continuing difficulty in meeting with the principal defendant.
 
 
 6
 One other significant phone call by Webster, which was ultimately ruled admissible only against the principal defendant, seemed to link defendant with the conspiracy.
 
 
 7
 Yeah I made a lot, a lot of money with Bun [defendant] with this, you know.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 I made a lot of money with ah, ah ........what I was doing. Was ah, ah let him get some money, I was ah, letting him having it like ah, four hundred a quarter, sixteen hundred an ounce right ... so he make four hundred dollars ... you know.
 
 
 11
 Id. at 281. Over defendant's objection, the conversation was conditionally admitted as "in furtherance of the conspiracy." While defendant requested a limiting instruction when the tape was played, the district court instead gave a strong limiting instruction to the jury, referring specifically to the conversation at issue, at the close of the case when it ruled that the conversation could be admitted only against principal defendant Webster. Id. at 268-69.
 
 
 12
 * Defendant first argues that Batson v. Kentucky, 476 U.S. 79 (1986), requires this court to remand the case to the district court for a hearing on defendant's challenge to the government's use of its peremptory strikes. In Batson, the Supreme Court held that once a defendant makes out a prima facie case of discrimination in the use of peremptory strikes, the burden shifts to the government to present racially neutral explanations for the strikes. Id. at 97. The Court considered the reach of Batson in Allen v. Hardy, 478 U.S. 255 (1986) (per curiam), and Griffith v. Kentucky, --- U.S. ----, 107 S.Ct. 708 (1987). In Allen, the Court held that Batson would not be applied retroactively to cases pending on collateral review when Batson was decided, 478 U.S. at 261; in Griffith, the Court held that Batson should be applied retroactively to cases pending on direct review or not yet final when Batson was decided, 107 S.Ct. at 716. The Court defined as final a case "in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." Griffith, 107 S.Ct. at 712 n. 6. The Griffith Court reasoned that new rules for the conduct of criminal cases should be applied retroactively because the "integrity of judicial review" requires that a new rule be applied to all similar cases pending on direct review, and because "selective application of new rules [would] violate[ ] the principle of treating similarly situated defendants the same." Id. at 713.
 
 
 13
 While neither case addresses the question whether Batson should apply retroactively to benefit a defendant whose case was not "final" when Batson was decided only because he fled from justice, the reasoning in both Griffith and Allen compels the conclusion that Batson should not apply. Defendant correctly points out that his case is not "final" as defined by the Court, and a literal reading of Griffith brings defendant within its scope. See Reply Br. at 4. Defendant, however, was convicted seven years before Batson was decided, and he was "similarly situated" with his co-defendants, whose convictions were "final" by 1982. See United States v. Webster, 639 F.2d 174 (4th Cir.1981), modified in part, 669 F.2d 185 (4th Cir.1982). Defendant suffers no " 'actual inequity,' " compared to his similarly situated co-defendants, see Griffith, 107 S.Ct. at 714 (quoting United States v. Johnson, 457 U.S. 537, 555 n. 16 (1982)), from being denied the benefit of Batson; in fact, it would be unreasonable that the " 'lucky individual,' " see id. at 716 (quoting Hankerson v. North Carolina, 432 U.S. 233, 247 (1977) (Powell, J., concurring in the judgment)), who benefits from the new rule should be the one who fled before sentencing. In addition, the Allen Court recognized that retroactive application of Batson to cases on collateral review would "seriously disrupt the administration of justice" by requiring hearings and possibly new trials years after a conviction became final. 478 U.S. at 260. The same kind of disruption would be engendered by retroactive application to defendant.
 
 II
 
 14
 Defendant's next contention, that the district court erred in failing to grant the motion to sever, is without merit. Under Fed.R.Crim.P. 14, the court may grant a severance if it appears that a defendant is "prejudiced" by a joinder of offenses or of defendants. Barring "special circumstances," the general rule is that defendants indicted together should be tried together. United States v. Bruqman, 655 F.2d 540, 542 (4th Cir.1981). The district court's decision to grant or deny a motion for severance will be overturned only for a clear abuse of discretion. Person v. Miller, 854 F.2d 656, 665 (4th Cir.1988). "Such an abuse of discretion will be found only where the trial court's decision to deny a severance 'deprives the defendant of a fair trial and results in a miscarriage of justice.' " Id. (quoting United States v. Becker, 585 F.2d 703, 706 (4th Cir.1978)).
 
 
 15
 The district court did not abuse its discretion in refusing to sever defendant from the case. The only "prejudice" defendant claims to have suffered allegedly arose from the admission of defendant Webster's phone conversation, in which Webster indicated that he had made money with "Bun" (defendant). See Appellant's Br. at 4-6; Reply Br. at 6. While the district court conditionally admitted the tape of that conversation, the court later gave a strong limiting instruction that specifically referred to the conversation in question. Any prejudice to the defendant was minimized by the limiting instruction. See Fed.R.Evid. 105; United States v. Peterson, 524 F.2d 167, 182 (4th Cir.1975). The court did not abuse its discretion in refusing to grant a severance where a limiting instruction could minimize any prejudice. See also Webster, 639 F.2d at 189 (no error found in district court's refusal to grant severance to several of defendant's co-conspirators).
 
 III
 
 16
 Defendant's final contention, that there was insufficient evidence to convict him on the conspiracy charge, also fails. The conspiracy to distribute charge requires the government to prove that the defendant "knew the conspiracy's purpose and took some action indicating [his] participation." United States v. Crockett, 813 F.2d 1310, 1316 (4th Cir.1987). These elements can be shown by circumstantial evidence, such as the defendant's "relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy." United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir.1984). Even uncorroborated testimony of an accomplice may be sufficient to sustain a conspiracy conviction. See United States v. Manbeck, 744 F.2d 360, 392 (4th Cir.1984). Ultimately, the jury's verdict must be upheld if there is substantial evidence, taking the evidence in the light most favorable to the government, to support the finding of guilt. United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir.1989).
 
 
 17
 Substantial evidence supports defendant's conspiracy conviction. The wiretapped conversations indicate that defendant had, or that the principal defendant Webster thought he might have, narcotics available for delivery. In addition to the taped conversations, direct testimony of a co-conspirator, if believed by the jury, would establish defendant as a supplier of packaging used in the drug trade. This evidence, viewed in the light most favorable to the government, is sufficient to establish the elements of knowledge and participation necessary for conviction. Cf. Webster, 639 F.2d at 187-89 & n. 8 (conspiracy conviction of one co-defendant overturned where evidence sufficient to convict only of possession or purchase; evidence of actual transactions as well as wiretapped conversations often necessary for conspiracy conviction).
 
 
 18
 For the foregoing reasons, the judgment entered by the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 
 19
 AFFIRMED.