972 F.2d 343
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Robert Dion SAVOY, Defendant-Appellant.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Jimmy Lee HAIRSTON, Defendant-Appellant.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Terrance Damisi BROWN, Defendant-Appellant.
 Nos. 91-5561, 91-5576, 91-5577.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 9, 1992
Decided: July 22, 1992
 
 Argued: Joseph N. Bowman, Alexandria, Virginia, for Appellant Savoy; Elise Dale Sinrod, Alexandria, Virginia, for Appellant Hairston; Joseph John McCarthy, Dawkins, Hanagan, McCarthy & Sengel, P.C., Alexandria, Virginia, for Appellant Brown. Mark Joseph Hulkower, Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 On Brief: Richard Cullen, United States Attorney, Herbert W. Mondros, Special Assistant United States Attorney, Stephen D. Kelly, Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 Before PHILLIPS, MURNAGHAN, and SPROUSE, Circuit Judges
 OPINION
 PER CURIAM:
 
 
 1
 Robert Dion Savoy ("Savoy"), Charles Leroy Jones ("Jones"), Jimmy Lee Hairston ("Hairston"), and Terrance Damisi Brown ("Brown") were indicted together in a five-count indictment by a grand jury in Alexandria, Virginia, in November, 1990. All four defendants were charged with count one, a conspiracy to possess with the intent to distribute and distribution of 50 or more grams of crack cocaine, to distribute crack cocaine to a person under twenty-one, and to use a person under eighteen to distribute crack cocaine.[1] Based on the alleged overt acts of that conspiracy, Savoy, Jones and Hairston were charged with count three, possession with the intent to distribute and distribution of more than 50 grams of crack cocaine;[2] Savoy alone was charged with count two, possession with the intent to distribute more than 50 grams of crack cocaine;[3] count four, distribution of crack cocaine to a person under the age of twenty-one;[4] and count five, use of a person under eighteen to facilitate a drug conspiracy.[5] A jury convicted Savoy on counts one, three, four, and five, but he was acquitted of count two. Hairston was convicted of counts one and three. Brown was convicted of count one. Jones was acquitted of both counts one and three.
 
 
 2
 Numerous issues have been raised by Savoy, Brown and Hairston on appeal. Specifically, all three have contended that the district court's admission of out-of-court statements made by an unindicted alleged co-conspirator violated Federal Rule of Evidence 801(d)(2)(E); Savoy has contended that the district court erred in admitting evidence as to his prior conviction; Brown has contended that the court erred in allowing evidence as to the acts underlying his prior juvenile conviction; and Hairston has argued that the court erred by denying both his motion to sever and his motion to acquit based on insufficiency of the evidence. Finding no error, we affirm.
 
 I.
 
 3
 The relevant facts tell a familiar story of crack cocaine distribution, undercover surveillance, and informants believed to be participants. The district court found that Robert Pitts was a co-conspirator of the defendants and permitted confidential informant Jonathan Ross and undercover police investigator Don Scott to testify at trial as to statements that were made by Pitts. Ross also testified as to conduct of Pitts that he witnessed. Ross testified that Savoy sold crack cocaine to him on at least two occasions in which Pitts was involved. Additionally, he testified that in August of 1990, at a recreation center swimming pool, Savoy attempted to recruit Ross to go to New York, in the presence of Brown and Pitts. Although Ross testified that he already knew from statements made to him by Pitts that their trips to New York were for the purchase of crack cocaine, he nonetheless asked why they went to New York. Ross testified that both Savoy and Brown each responded that the purpose of their trips to New York was to buy crack cocaine.
 
 
 4
 Subsequent events were testified to by Ross and the undercover detectives involved. On September 12, 1990, Ross paged Savoy on a beeper and Hairston returned the call. Hairston then gave the phone to Savoy, who made arrangements to sell Ross two ounces of crack cocaine. Undercover police investigator Scott and Ross, under surveillance by detective Clifford Banks, parked in front of Ross' house. At the time Savoy was to arrive, Pitts drove up, parked, and walked up to the vehicle in which Scott and Ross were seated. Pitts told Scott and Ross that he would not go back to New York to"pick nothing up" for Savoy because he believed that the police were following him during his last trip. Savoy and Hairston soon drove up and parked behind Scott's truck. While Savoy approached the vehicle, Hairston joined Pitts and the two stood by a fence several feet from Scott's car. Savoy gave several bags to Scott and received $800 in cash in exchange. Savoy counted the money, gave Scott his pager number, and told him that he should contact him directly instead of through Ross. He then joined Hairston and Pitts against the fence. A forensic chemist found the substance in the bags to be 16.47 grams of cocaine base. Scott and Ross set up another deal with Savoy on September 26, 1990. Ross called Savoy, who agreed to sell two ounces, but said that he would send Brown with the crack. Brown arrived in Savoy's mother's car, and gave Scott a package supposedly containing crack in exchange for $2,200. However, the substance in the package was beeswax. Savoy later denied having sent Brown at all, and told Scott again to contact him directly without involving Ross.
 
 
 5
 Ross testified that in October of 1990, Pitts told him that Savoy, Hairston and Jones planned to go to New York City to buy crack cocaine on October 12 and that he described their plans in detail. Relaying the information provided by Pitts, Ross told the detective, Banks, that Savoy, Hairston and Jones intended to fly to New York and back on October 12, 1990, on the Trump Shuttle, that the drugs would be on Hairston's person, and that the three planned to take separate routes as they exited the airport terminal in Washington before approaching their car. On that date, the events unfolded as Ross had told the detective. Savoy, Hairston, Jones, and Brown were first observed in Oxon Hill, Maryland, at which time Hairston was carrying a brown leather jacket. Later, Savoy, Hairston, and Jones flew to New York City on the Trump Shuttle. They took a taxi to Manhattan, stayed about an hour, returned to the airport, and flew back to Washington. Upon leaving the airport terminal in Washington, Hairston was wearing the leather jacket. The three walked towards the parking lot separately before meeting at their car. They were arrested. Five plastic bags, later determined to contain 155.2 grams of cocaine base, were found in an inside pocket of Hairston's jacket. Hairston first said that he was Terrance Brown. He said that it was not his coat and that the others "bought it." While in custody, Hairston continued to claim that he was Brown. Finally, Hairston said that he was "not going to take this" alone, and identified himself.
 
 
 6
 After a jury trial and the conviction of three of the four defendants, Savoy was sentenced to 292 months imprisonment, Hairston was sentenced to 151 months imprisonment, and Brown was sentenced to 188 months imprisonment. Each term of imprisonment was to be followed by supervised release.
 
 II.
 
 7
 All three appellants challenge the district court's decision to allow informant Ross and investigator Scott to testify as to the out-of-court statements made by Pitts, a seventeen-year-old alleged co-conspirator, who was not indicted. Ross testified as to numerous statements made to him by Pitts regarding the activities of the defendants, including that Pitts told him (1) that Pitts went with Savoy, Hairston and Brown to New York on two occasions in June of 1990 to buy crack cocaine; (2) that Savoy gave Pitts seven grams of crack for each 62 grams that Pitts carried back from New York; (3) that Savoy, Brown and Hairston flew to New York to buy crack on May 26, 1990; (4) that Savoy went to New York to buy crack on September 11, 1990; (5) that Savoy, Hairston and Jones intended to travel to New York via the Trump Shuttle on October 12, 1990 to buy crack, that Hairston would carry the crack, and that the three would separate as they left the airport terminal before meeting at the car in the parking lot. Scott testified that Pitts stated that the police had followed him on his last trip to New York and that he would not go back to buy crack for Savoy.
 
 
 8
 The testimony was admitted as non-hearsay statements made "by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Under Rule 801(d)(2)(E), the statements are admissible if the district court makes a factual determination, based on a preponderance of the evidence, that a conspiracy existed between the defendants and the declarant, and that the statements were made during and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987). Our standard of review is whether the court's determination was clearly erroneous. Bourjaily, 483 U.S. at 181.
 
 A.
 
 9
 The determination that Pitts was a member of the conspiracy was not clearly erroneous. Independent evidence, apart from the out-ofcourt statements made by Pitts, was introduced to demonstrate the existence of a conspiracy involving the defendants and Pitts. That independent evidence includes the testimony by Ross regarding his observation of Pitts' involvement with Savoy in the sale of crack cocaine on two occasions. On one occasion, Pitts brought a quarter of an ounce of crack to Ross for Savoy and accepted $200 for Savoy from Ross, and, at another time, he went with Savoy to Ross' house to sell crack. Ross also testified that Pitts was present at the recreation center when Savoy asked Ross to participate in their trips to New York to buy crack. Furthermore, evidence was introduced that corroborated the statements made by Pitts to Ross. A New York taxi driver testified that he recognized some of the defendants from a prior trip to New York; airline tickets in some of the defendants' names were introduced; and the events of October 12, 1990, as observed by police officers, unfolded as Ross had said that Pitts stated they would.
 
 
 10
 Appellants have cited several Fourth Circuit cases to support their contention that there must be sufficient evidence, independent of the out-of-court statements, to establish the declarant's membership in the conspiracy by a preponderance of the evidence, on the ground that "bootstrapping" is not permitted under Federal Rule of Evidence 801(d)(2)(E). Although we have stated that such a showing must be made "by a preponderance of independent evidence," United States v. Jackson, 863 F.2d 1168, 1171 (4th Cir. 1989), the court may consider both the independent evidence and the out-of-court statements themselves to determine whether the preponderance burden has been met.[6] Bourjaily, 483 U.S. at 180-81; United States v. Leavis, 853 F.2d 215, 219-20 (4th Cir. 1988).
 
 
 11
 Appellants also have challenged the independent evidence. First, they have argued that Ross' testimony regarding Pitts' involvement in drug transactions with Savoy should not be considered because the government, at trial, failed to elicit evidence regarding when those events took place, and that the events probably took place prior to the start of the conspiracy charged in the indictment. Evidence as to an alleged co-conspirator's involvement in drug transactions with a member of the conspiracy prior to the date of the conspiracy charged in the indictment can provide at least some evidence as to membership in the conspiracy during the period charged. The statements of the alleged co-conspirator must have been made during the course of the conspiracy, Fed. R. Evid. 801(d)(2)(E), but no such restriction applies to the independent evidence that supports a finding of membership in the conspiracy. Moreover, the district court, in making its factual findings for purposes of Rule 801(d)(2)(E),"is not bound by the rules of evidence except those with respect to privileges." Fed. R. Evid. 104(a). Second, appellants have contended that the fact that Pitts accompanied Savoy to conduct certain drug transactions and was present at the discussion about going to New York to buy crack at the recreation center does not show that Pitts was tied to the conspiracy. The district court disagreed, and we do not find any error.
 
 B.
 
 12
 We next consider whether the district court clearly erred in concluding that a preponderance of the evidence established that Pitts' statements were made in furtherance of the conspiracy. In United States v. Urbanik, 801 F.2d 692, 698 (4th Cir. 1986), we reversed on the ground that the district court improperly admitted a coconspirator's statement that was only "idle conversation" and "merely a casual aside" to a discussion about weight-lifting, but was not made to "further" a purpose of the conspiracy. The district court must distinguish between statements made in furtherance of a conspiracy, and "mere conversation" or "merely narrative declarations." United States v. Eubanks, 591 F.2d 513, 520 (9th Cir. 1979) (citations omitted). "The requirement that the statements have been in furtherance of the conspiracy is designed both to assure their reliability and to be consistent with the presumption that the coconspirator would have authorized them." Urbanik, 801 F.2d at 698 (quoting United States v. Lieberman, 637 F.2d 95, 102 (2d Cir. 1980)).
 
 
 13
 Although one could infer that Pitts' statement that he was followed in New York and would not go back was not to "further" a goal of the conspiracy, we find that the record supports the district court's determination that Pitts' statements were made in furtherance of the conspiracy. At the recreation center, in Pitts' presence, Savoy asked Ross to go to New York to buy crack. Such recruiting of Ross to join the drug distribution network can properly be interpreted as a goal of the conspiracy. It is not error to find that Pitts' statements, explaining to Ross about prior trips to New York to buy crack and plans for the October trip, were made in furtherance of the conspiracy's goal of selling crack to Ross. Therefore, the finding that Pitts' statements were made in furtherance of the conspiracy is not clearly erroneous. Any error, if present at all, in admitting the one statement by Pitts that he would not return to New York again was harmless. The district court's decision to admit Pitts' statements is affirmed.
 
 III.
 
 14
 Savoy has contested the district court's decision to permit the introduction of evidence under Federal Rule of Evidence 404(b) as to his prior conviction for possession of crack cocaine. Brown also has claimed that the district court erred by admitting evidence as to his prior sale of crack cocaine. The court instructed the jurors to consider that evidence to determine intent only if they found that other evidence established beyond a reasonable doubt that each defendant did the acts charged in the indictment. In neither case do we find error.
 
 
 15
 Evidence as to Savoy's conviction on February 20, 1990 for possession of cocaine base was introduced. The district court did not abuse its discretion in permitting introduction of the evidence to establish intent. See United States v. King, 768 F.2d 586, 587-88 (4th Cir. 1985); United States v. Brugman, 655 F.2d 540, 544-45 (4th Cir. 1981). Even though there was other evidence showing Savoy's knowledge and intent, i.e., the evidence that he sold a quarter of an ounce to the undercover officer during the period of the conspiracy charged here, the existence of that other evidence does not require a conclusion that additional evidence as to his intent was unnecessary, or that the evidence as to a prior conviction for possession was improperly offered solely to prove his character. Intent was clearly in issue, as Savoy (1) portrayed his intent on the trip to New York as the intent to shop for tennis shoes; (2) sponsored the testimony of Pitts, who testified that Savoy never gave him drugs; and (3) argued that the evidence was insufficient to establish that he was aware Hairston was carrying drugs in his jacket pocket when they returned from New York. The court did not abuse its discretion in allowing admission of the evidence.
 
 
 16
 Brown has challenged the admission of evidence as to his prior sale of crack cocaine on the grounds that an officer was improperly permitted to offer hearsay barred by Federal Rule of Evidence 802, and that the introduction of the hearsay evidence violated his Sixth Amendment right of confrontation. The government called an officer of the Alexandria Police Department, who testified that he observed Brown in April, 1990, when Brown spoke with a man who then received a substance appearing to be crack from Brown, and gave what appeared to be cash to Brown. The officer also was permitted to testify that Brown was subsequently arrested that day; that he was found to have a pager, cash and seven rocks of what appeared to be crack; that chemical analysis revealed the rocks to be crack; that the other man was arrested; and that analysis of the rock found in the other man's possession revealed that it was crack.[7] The district court concluded that, when the officer testified about the seizure of a substance from Brown by other officers and the chemist's analysis identifying the substance seized as crack, the testimony was not hearsay because he had personal knowledge of the conviction and the evidence to support it, such that his testimony was not based on mere statements made to him by others. The court did not abuse its discretion in finding that the evidence was not hearsay, and that the witness had personal knowledge of the matters as to which he testified. See M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Society, Inc., 681 F.2d 930, 932 (4th Cir. 1982) (citing 3 J. Weinstein & M. Berger, Weinstein's Evidence, p 602 (1981)).
 
 
 17
 Brown also has contested the admissibility of the evidence as to his prior arrest under Federal Rule of Evidence 404(b), on the same basis as did Savoy. His argument fares no better. Less than four months prior to the start of the instant conspiracy, Brown was charged with committing the same offense as is charged in the instant indictment. The evidence was probative of intent, which was at issue in the trial, and the court's determination that its probative value outweighed its prejudicial effect was not erroneous.
 
 IV.
 
 18
 Finally, we consider the challenges raised by Hairston as to the denial of both his motion for severance and his motion to acquit. Hairston has urged us to conclude that the district court erred in denying him a separate trial. He has claimed that, although the crack was found in his jacket pocket upon his return from New York, there was no evidence of his involvement in any drug transactions and no evidence that he was aware the crack was in his pocket. That claim underlies his argument that he was prejudiced by being required to stand trial with the other defendants, on the grounds that impermissible inferences as to his knowledge and intent were created and that he was unfairly exposed to evidence as to the prior bad acts of the other defendants. Hairston also has contended that the court erred by failing to explain to the jury during the trial that certain evidence applied only to some of the defendants, and by failing to provide sufficient jury instructions regarding the limitation of certain evidence to certain defendants.
 
 
 19
 The arguments are without merit. "[T]he general rule is that defendants indicted together should be tried together." United States v. Chorman, 910 F.2d 102, 114 (4th Cir. 1990) (quoting United States v. Brugman, 655 F.2d 540, 542 (4th Cir. 1981)). That general rule is especially applicable to an indictment for conspiracy. Id. Whether to permit severance is a decision left to the discretion of the trial court; we consider only whether the court clearly abused that discretion. Id. Therefore, only if the denial of severance deprived Hairston of a fair trial or resulted in a miscarriage of justice should we find an abuse of discretion. See id. While Hairston has argued that no other evidence whatsoever linked him to the conspiracy, and that, consequently, his defense that he was the unknowing repository of drugs stashed in his pocket by others could only be fairly considered at a separate trial, the argument stretches the imagination beyond any rational bounds. Not only was Hairston the one carrying 155 grams of crack at the time that he, Savoy and Brown were arrested at the airport, he made an admission to the police upon arrest. Also, he was present when Savoy sold crack to Detective Scott; Pitts told Ross that Hairston would go to New York by plane on October 12, 1990 with the others and that Hairston would be carrying the crack; Ross paged Savoy to arrange a drug transaction and Hairston returned the call before putting Savoy on the phone; and Ross testified that Pitts described going to New York to buy crack with Hairston in June of 1990. There was more than enough evidence linking Hairston to the conspiracy, so that denial of the motion to sever was well within the court's discretion. Moreover, the court gave limiting instructions regarding evidence that pertained only to particular defendants. The jury appears to have been fully capable of sifting the evidence as it applied to each defendant, as may be inferred from the acquittal of Jones on both counts for which he was charged. See Chorman, 910 F.2d at 114; United States v. Porter, 821 F.2d 968, 972 (4th Cir. 1987) ("No prejudice exists if the jury could make individual guilt determinations by following the court's cautionary instructions, appraising the independent evidence against each defendant").
 
 
 20
 Hairston has also appealed from the district court's denial of his motion for acquittal based on the insufficiency of the evidence as to his intent to distribute. He was charged with conspiring to possess with intent to distribute cocaine base, and possession with intent to distribute more than 50 grams of cocaine base. He claims that the jury would have to impute all the activities of his co-defendants to him in order to conclude, beyond a reasonable doubt, that he (1) knew the crack was in his jacket; (2) had agreed to participate in that overt act as part of an ongoing conspiracy; and (3) intended to possess and distribute the crack.
 
 
 21
 We must sustain the verdict "if there is substantial evidence, taking the view most favorable to the government, to support the finding of guilt." United States v. Holt, 529 F.2d 981, 984 (4th Cir. 1975). Hairston's argument that the evidence was insufficient as to actual knowledge of possession, because his co-defendants might have slipped the drugs into the inner pocket of his jacket without his knowledge, is an implausible one. The circumstances in United States v. Manbeck, 744 F.2d 360, 390 (4th Cir. 1984), cert. denied, 469 U.S. 1217 (1985), are unlike those in the present case. In Manbeck, we found no evidence linking the defendants who loaded and unloaded a boatload of marijuana to any scheme to distribute the marijuana. While "mere knowledge, acquiescence, or approval without cooperation or agreement to cooperate is not enough" to prove a conspiracy to distribute, id. (quoting United States v. Mendez, 496 F.2d 128, 130 (5th Cir. 1974)), the evidence here was more than sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that Hairston was a participant in the conspiracy to distribute and that he possessed the crack with the intent to distribute.
 
 
 22
 For all the foregoing reasons, the rulings of the district court are
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 21 U.S.C. § 846
 
 
 [2]
 Id. §§ 841(a)(1) and 841(b)(1)(A)(ii)
 
 
 [3]
 Id
 
 
 [4]
 Id. §§ 841(a)(1) and 845(a)
 
 
 [5]
 Id. §§ 841(a)(1) and 845(b)
 
 
 [6]
 The Supreme Court stated that it had no occasion to consider whether the out-of-court statements themselves, even without independent evidence, could suffice to support the requisite factual finding. Bourjaily, 483 U.S. at 181. We need not consider that question either, since there was independent evidence to establish that Pitts was a member of the conspiracy and that the statements were made to Ross during the existence and in furtherance of the conspiracy
 
 
 [7]
 Brown's record of conviction was not introduced because it was a juvenile conviction