36 F.3d 1094
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard L. BRYANT, a/k/a Pumpkin, a/k/a Rock, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Johnnie HARRIS, a/k/a Bra, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jennifer A. ROUSE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Benjamin SAWYER, Jr., a/k/a Big Ben, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Keith C. WARD, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
John R. WARD, a/k/a Billy, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mike Andrew BROCKETT, Defendant-Appellant.
 Nos. 93-5022, 93-5023, 93-5026, 93-5027, 93-5028, 93-5029, 93-5075.
 United States Court of Appeals, Fourth Circuit.
 Argued June 9, 1994.
Decided Sept. 30, 1994.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. Rebecca B. Smith, District Judge. (CR-92-88-N)
 ARGUED: Christopher P. Shema, Shema & Shema, P.C., Chesapeake, VA; Samuel W. Meekins, Jr., Wolcott, Rivers, Wheary, Basnight & Kelly, P.C., Virginia Beach, VA, for appellants.
 Michael R. Smythers, Asst. U.S. Atty., Norfolk, VA, for appellee.
 ON BRIEF: Andrew A. Protogyrou, Knight, Dudley, Dezern & Clarke, Norfolk, VA, for apellant Brockett;
 Jesse E. Demps, Eric O. Moody & Associates, P.C., Portsmouth, VAa, for appellant Keith Ward;
 Duncan R. St. Clair, III, St. Clair, Miller & Mark, P.C., Norfolk, VA, for appellant Bryant;
 Ann Aleathia Gourdine, Melvin & Gourdine, Portsmouth, VA, for appellant Rouse;
 W. Thurston Harville, Norfolk, VA, for appellant Harris.
 Helen F. Fahey, U.S. Atty., Norfolk, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before HALL, MURNAGHAN, and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Following an extensive federal drug task force investigation, 19 persons were indicted for their participation in a large drug distribution conspiracy in Virginia Beach, Virginia. Richard Bryant, alias "Pumpkin," was the organizer and leader of the ring and he and his conspirators imported multi-kilogram amounts of cocaine from New Jersey and New York to Virginia Beach. The cocaine was distributed to mid-level dealers who repackaged the cocaine for street sale or cooked it into rocks of "crack" or cocaine base for street distribution. The street dealers distributed the cocaine and crack, mainly in inner-city housing projects. The trial revealed that the conspiracy distributed approximately 29 kilograms of cocaine and 31 kilograms of "crack," with a total street value of over $6.5 million.
 
 
 2
 Eleven of those charged pled guilty and eight proceeded to trial. On the second day of trial, Howard Jeff Brown pled guilty and agreed to testify in the trial against the remaining seven defendants. All defendants were convicted and received sentences from 132 months to life imprisonment. From the judgments of conviction, seven defendants appeal raising numerous issues, two of which merit a somewhat fuller discussion. After having considered all the points raised, we affirm the judgments of the district court.
 
 
 3
 * The principal point raised by the appellants arises from the district court's accepting a guilty plea from Howard Brown during the course of trial and permitting him, as part of his plea agreement, to testify thereafter against the remaining defendants. The appellants argue that in effect, Brown "changed sides" and prejudiced their defense in violation of the Due Process Clause of the Fourteenth Amendment and the Sixth Amendment guarantee of effective assistance of counsel. They contend that since Brown and his attorney participated in the formulation of pre-trial strategy sessions, participated in the voir dire process, and undertook participation in a joint defense, allowing Brown thereafter to switch sides violated the remaining defendants' rights to a confidential and effective attorney-client relationship and an impartial jury.
 
 
 4
 The contention that Brown's switching sides amounted to a compromise of the remaining defendants' attorney-client relationships essentially amounts to an allegation that the government used Brown as a spy in the defense camp and purposefully delayed his plea bargain until he could bring the government valuable information on defense strategy. While this allegation is a serious one, the record provides no factual support for it. The record shows that during the course of trial, counsel for Brown had been discussing with the government's attorneys the possibility of pleading guilty. Once the plea agreement was reached, the plea was accepted by the court and Brown testified on behalf of the government against the remaining defendants involved in the conspiracy. There is no evidence to suggest that Brown revealed any trial strategies or even that there were any useful trial strategies to reveal. Moreover, there is no evidence that the government in any way benefited from Brown's switch except through testimony given which related to the conspiracy.
 
 
 5
 In United States v. Brugman, 655 F.2d 540 (4th Cir.1981), we were presented with a similar problem. There, a drug conspiracy case proceeded to trial against three defendants, one of whom "changed sides" during trial by pleading guilty and testifying against the remaining two. The defendant who changed sides had attended a joint defense counsel meeting during trial, prompting the remaining two defendants to argue that the government deprived them of effective assistance of counsel guaranteed by the Sixth Amendment. In rejecting the claim, we applied a four-part test:
 
 
 6
 In determining whether there has been an invasion such as to be violative of the Sixth Amendment right to effective assistance of counsel, four factors must be considered. They include: (1) whether the presence of the informant was purposely caused by the government in order to garner confidential, privileged information, or whether the presence of the informant was a result of other inadvertent occurrences; (2) whether the government obtained, directly or indirectly, any evidence which was used at trial as a result of the informant's intrusion; (3) whether any other information gained by the informant's intrusion was used in any other manner to the substantial detriment of the defendant; and finally (4) whether the details about trial preparation were learned by the government.
 
 
 7
 Id. at 546 (citation omitted).
 
 
 8
 No defense attorney in this case argued at trial the existence of facts relating to any of the four factors identified by the court in Brugman. Indeed, even on appeal the defendants are unable to point to any evidence that the government engineered the timing of Brown's change of heart, or that the government obtained valuable confidential information about the defense's trial strategy. On the contrary, the government has denied having obtained any such information. On this record, we believe that the defendants' right to effective assistance of counsel guaranteed by the Sixth Amendment was not compromised in any way by Brown's pleading guilty during trial and then testifying against the remaining defendants.
 
 
 9
 The defendants also argue that Brown participated in voir dire and that his changing sides violated their right to an impartial jury. However, the record again does not support the contention. The only apparent effect of Brown's participation in voir dire appears to have been that the district court struck, for cause and upon the government's motion, a potential juror who had ties to Brown's attorney. The defendants cite no authority to support their theory that in the absence of prejudice, when a defendant pleads guilty during the trial after participating in voir dire, the remaining defendants are automatically subjected to trial by a tainted jury. In the absence of any demonstration by these defendants of facts or law to support their position, we must reject it.
 
 II
 
 10
 Appellant John Ward contends that the district court erred in refusing to suppress evidence seized in a search of him and of the automobile he was driving, conducted on May 31, 1991. Ward and his car were searched, following his arrest for carrying a concealed weapon. Ward argues that the officers had no probable cause to arrest him for carrying a concealed weapon and that therefore the search incident to an arrest was illegal.
 
 
 11
 On May 31, 1991, a task force detective received a tip from a previously reliable informant that a light-colored Lincoln Continental with a model year in the mid-70s and a license plate number starting with "TGH," occupied by two black, heavyset males, one of whom would be Benjamin Sawyer, Jr., would be delivering cocaine that evening to Freddie Lee Blackshear at 205-A Sykes Avenue. Because the police had previously received information from informants that Sawyer was a cocaine dealer and indeed had been arrested for possession of cocaine with intent to distribute and because they had previously executed search warrants for cocaine and "crack" at the Sykes Avenue apartment and suspected that Blackshear, who lived there, was a cocaine dealer working for Sawyer, a team of detectives and officers set up surveillance of 205-A Sykes Avenue.
 
 
 12
 At approximately 9:45 p.m. on that day, the surveillance team observed a light-colored Lincoln Continental stop in a driveway next to 205-A Sykes Avenue. The car was occupied only by its driver, a black male. After approaching the car and asking its driver to step out and produce identification, the police ascertained that the driver was not Benjamin Sawyer, but John Ward. While Ward talked to the officers, another officer shone a flashlight into the car and saw a partially concealed handgun protruding from under the armrest between the driver and passenger seats. This officer advised the others of what he saw and Ward was promptly arrested for carrying a concealed weapon. A search of his person revealed cocaine, and the subsequent search and inventory of the vehicle yielded additional firearms, money, and more cocaine.
 
 
 13
 Ward argues that under Virginia law the arrest was invalid because the misdemeanor was not committed in the arresting officer's presence and Virginia does not recognize the "police team" rule. The officer who observed the weapon in the front seat of the automobile advised the other officers of what he had seen and one of the other officers made the arrest. Because the arrest was not legal, Ward argues, the search incident to the arrest was also unconstitutional.
 
 
 14
 The district court in denying the motion to suppress concluded that the search was legal for a number of reasons. It began with the observation that the initial encounter with Ward was consensual and that the search in any event was justified under Terry v. Ohio, 392 U.S.1 (1968) (requiring only a reasonable suspicion to justify a frisk for dangerous weapons). The court also concluded that the officers were justified in using a flashlight for looking into Ward's automobile.
 
 
 15
 We agree with the district court's conclusions. The circumstances clearly presented the officers with a reasonable suspicion that he was violating drug laws, justifying their making a Terry stop and frisking Ward. The gun, although not fully revealed, was in plain view and its observation justified his arrest. Ward's argument that state law precludes an arrest for a misdemeanor that occurs out of the arresting officer's presence cannot be used to make a federal constitutional case under the Fourth Amendment. See Street v. Surdyka, 492 F.2d 368, 371-72, 373 n. 7 (4th Cir.1974). See also under Virginia law, Penn v. Commonwealth, 412 S.E.2d 189 (Va.App.1991), aff'd, 420 S.E.2d 713 (Va.1992) (holding that evidence retrieved from a statutorily unlawful misdemeanor arrest is not subject to the exclusionary rule).
 
 
 16
 Because federal constitutional law justifies the search of Ward and the vehicle for weapons in the circumstances of this case, see Michigan v. Long, 463 U.S. 1032 (1983), we can find no error in the district court's ruling.
 
 III
 
 17
 Finally, the appellants in this case raise an array of other challenges to the trial and sentencing below which we have reviewed and which we conclude have no merit.
 
 
 18
 The appellants contend that the district court abused its discretion in refusing to require the government to produce the names and addresses of all potential trial witnesses. Defendants in criminal cases are not entitled to such information automatically, and requiring this discovery rests in the district court's broad discretion, to be exercised under the balancing test first outlined in Roviaro v. United States, 353 U.S. 53, 62 (1957):
 
 
 19
 [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
 
 
 20
 Thus, in United States v. Smith, 780 F.2d 1102 (4th Cir.1985) (en banc ), we held that when the government seeks to protect the identity of a confidential informant by shielding his identity from the defense prior to trial, the defense bears the burden of persuading the court that the balance should be struck in favor of disclosure:
 
 
 21
 The defendant must come forward with something more than speculation as to the usefulness of such disclosure. Disclosure is not required despite the fact that a criminal defendant may have no other means of determining what relevant information the informant possesses.
 
 
 22
 Id. at 1108 (citations omitted). The defendants in this case failed to persuade the district court that the identities of witnesses should be revealed to them prior to trial, and we are not provided any evidence that the district court's refusal to do so caused prejudice or resulted from an abuse of discretion.
 
 
 23
 Appellants next raise generalized challenges to the constitutionality of the federal Sentencing Guidelines and the sentences handed down to them pursuant to the Guidelines. They argue that the United States Sentencing Commission's mandate to formulate sentencing guidelines applicable to categories of defendants, rather than individual defendants, violates defendants' rights to due process. This argument, however, was rejected in Mistretta v. United States, 488 U.S. 361 (1989); see also United States v. Bolding, 876 F.2d 21, 22 (4th Cir.1989) (holding that after Mistretta a due process challenge to the categorical sentencing imperative of the Guidelines must fail). They also challenge the Guidelines' treatment of one gram of "crack" as the equivalent of one hundred grams of powder cocaine for sentencing purposes, arguing that this difference in treatment is "unconstitutional" and unfairly led to the enhancement of their sentences because crack is a drug preferred by blacks. We have previously determined, however, that the disparity in sentencing for cocaine and "crack" dealing is based in the legitimate government interest of dealing with the greater threat to society posed by "crack." See United States v. Thomas, 900 F.2d 37, 39-40 (4th Cir.1990). We have also rejected an argument that the greater sentence for dealing in crack discriminates against blacks, holding in United States v. Bynum, 3 F.3d 769 (4th Cir.1993), that as the Sentencing Guidelines are neutral on their face, and absent any evidence of discriminatory animus motivating the Sentencing Commission, a racial discrimination challenge to the Guidelines must fail.
 
 
 24
 In addition to these general challenges, the appellants raise specific objections to their sentences. First, they argue that the immunized testimony of eleven co-defendants, which served to establish the amount of drugs handled by the defendants during the course of the conspiracy, was inherently unreliable due to the witnesses' motivation to lie in exchange for leniency, citing Lee v. Illinois, 476 U.S. 530, 546 (1986), for its statement that "a co-defendant's confession inculpating the accused is inherently unreliable." This statement, however, commenting on the extent to which a co-defendant's confession of guilt inculpates the other defendant, does not address a co-defendant's testimony about the amount of drugs involved for sentencing purposes. Moreover, appellants have been unable to demonstrate any basis for discrediting the finding on the amount of drugs used to calculate their respective sentences. The overwhelming evidence, taken over the course of the week-long sentencing phase, supports the district court's conclusions.
 
 
 25
 Finally, Jennifer Rouse objects to her 30-year sentence on the basis that it is so disproportionate to her crimes as to violate the Eighth Amendment's prohibition against cruel and unusual punishment. Rouse, who was conspiracy leader Bryant's girlfriend, argues that she was merely a drug user and a peripheral player, not an active member of the conspiracy. Despite this defense, she was convicted of conspiracy to possess and distribute cocaine in violation of 21 U.S.C. Sec. 846 and possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). The evidence at trial established that far from being a nonentity, Rouse arranged accommodations for other conspiracy members, helped package money and drugs, recruited a new dealer, and sold drugs herself. These are serious crimes which are subject to significant penalties under the Sentencing Guidelines. Moreover, we have held that a challenge in these circumstances based on disproportionality does not lie under the Eighth Amendment. See United States v. Francois, 889 F.2d 1341 (4th Cir.1989), cert. denied, 494 U.S. 1085 (1990).
 
 
 26
 For the reasons stated, we affirm all appellants' convictions and sentences.
 
 
 27
 AFFIRMED.