UNITED STATES of America,
Plaintiff–Appellee,

v.

Louis SAMUELS, Defendant–Appellant.

No. 91–5429.

United States Court of Appeals,
Fourth Circuit.

Argued April 9, 1992.

Decided June 22, 1992.

Donnie Hoover, Hoover & Williams, Charlotte, N.C., argued for defendant-appellant.

Robert James Conrad, Jr., Asst. U.S. Atty., argued (Thomas J. Ashcraft, U.S. Atty., on the brief), Charlotte, N.C., for plaintiff-appellee.

Before WILKINSON and HAMILTON, Circuit Judges, and KIDD, Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

Louis Samuels appeals his conviction and sentencing on four counts of possession of a firearm or ammunition by a convicted felon in violation of 18 U.S.C. § 922(g). A jury found Samuels guilty on all four counts, and the district court sentenced him to 540 months in prison under the Sentencing Guidelines. The court initially found that Samuels qualified for sentence enhancements as an "armed career criminal," U.S.S.G. § 4B1.4, but ultimately sentenced him under the "career offender" provision, *id.* § 4B1.1. We affirm Samuels' conviction. For the reasons set forth below, however, we think the applicable sentencing provision in this case is § 4B1.4, and we remand for resentencing under its terms.

## I.

In April 1991, the Grand Jury for the Western District of North Carolina indicted Louis Samuels on three counts of possession of a firearm by a convicted felon and one count of possession of ammunition by a convicted felon. The indictment noted that Samuels had previously been convicted of the offense of felony riot, and charged him with possession of (1) a silver handgun on January 1, 1991; (2) a silver handgun on January 30, 1991; (3) an Ithaca shotgun on February 2, 1991; and (4) ten Winchester shotgun shells on February 13, 1991.

At trial, several witnesses recounted traumatic encounters with Samuels. First, with respect to count one, Necolle Watts testified that on January 1, 1991, Samuels lured her to a motel room at the Cricket Inn in Charlotte, North Carolina. After she arrived at the motel, Samuels held a silver handgun to her head and threatened her several times, repeatedly forcing her to perform oral sex and once forcing her to ingest drugs. Second, Loretta Ardery testified that on January 30, 1991, Samuels called her and asked for a ride from his room at the Econo Lodge in Charlotte. Ardery testified that she drove to the motel and went to Samuels' room to help him carry his suitcases, when Samuels grabbed her, forced her into the room, and attempted to tie her up while repeatedly pointing a silver handgun at her face. Third, Seymore James, Samuels' uncle, testified that on February 2, 1991, Samuels drove to James' house and asked James to keep his shotgun for him. James took the shotgun and kept it in his house until he turned the weapon over to the police on February 14, 1991. Finally, several Charlotte police officers testified that they found shotgun shells in a dresser drawer at Samuels' residence on February 13, 1991. The officers seized the shotgun shells during a search of Samuels' residence, pursuant to a search warrant issued by a magistrate of the state of North Carolina.

The jury convicted Samuels on all four counts. The probation officer filed a presentence report calculating Samuels' offense level at 34 under the "armed career criminal" provision of the Sentencing Guidelines, § 4B1.4. The government filed objections to the report, and argued that

although Samuels was eligible for sentence enhancements as an armed career criminal, he qualified for a greater enhancement under § 4B1.1 as a "career offender." In the government's view, Samuels qualified as a career offender because his possession offenses were "crimes of violence" under the Guidelines. The district court agreed, calculated Samuels' offense level at 37 under § 4B1.1, and sentenced him to 540 months in prison.

Samuels appeals.

## II.

■ Samuels advances two arguments in appealing his conviction. First, he contends that the district court erred in rejecting his motion for severance of the four charges against him. We think the district court was well within its discretion in denying the motion. The issues in the various counts were unlikely to give rise to jury confusion, and joinder promoted the value of judicial economy because many of the witnesses testified about more than one count. The general rule is that counts charged in the same indictment will be joined at trial, *see* 1 C. Wright, *Federal Practice and Procedure* § 222, at 776 (1982), and Samuels has failed to carry his burden of establishing that the denial of severance deprived him of a fair trial or resulted in undue prejudice. *See United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir.1984); *United States v. Parodi*, 703 F.2d 768, 780 (4th Cir.1983).

■ Second, Samuels argues that the district court erred in denying his motion to suppress the shotgun shells, which were seized during the search of his residence under a search warrant issued by a state magistrate. Samuels suggests that the warrant was invalid because it was not supported by probable cause. We disagree. The warrant at issue here provided an adequate basis for the magistrate to conclude that there was probable cause to search Samuels' residence. Moreover, even if the warrant in this case were somehow deficient, the officers involved in the search relied in good faith on the magistrate's determination as to probable cause,

so that the district court's denial of the motion to suppress was proper under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

## III.

We now turn to the issues of sentencing.

## A.

■ Samuels contends that the district court erred in its application of the sentence enhancements under the "career offender" provision, § 4B1.1 of the Guidelines. In calculating Samuels' offense level, the district court found that Samuels' § 922(g) offenses were "crimes of violence" qualifying him for career offender status.

We agree that the district court's application of the career offender provision was improper. Samuels qualifies as a career offender only if, among other things, the instant offense "is a felony that is either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. Here the district court thought that Samuels' § 922(g) offenses satisfied the Guidelines' definition of "crime of violence" because they involved conduct presenting "a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii). In arriving at this conclusion, the court considered the trial testimony of Necolle Watts and Loretta Ardery concerning counts one and two.

■ Ordinarily the Guidelines permit a district court to look to the actual conduct underlying a conviction. *See* U.S.S.G. Ch. 1, Pt. A, intro. comment. (noting that the Sentencing Guidelines "contain a significant number of real offense elements"). Such an examination, however, is inappropriate where the Guidelines expressly limit the district court's power to conduct a factual inquiry. Such is the case with respect to whether a § 922(g) offense constitutes a "crime of violence" for purposes of the career offender provision. In the interest of uniform treatment of instant offenses under the career offender provision, the Guideline language in force at the time of Samuels' sentencing focuses the court's in-

quiry upon the indictment, directing it to consider whether "the conduct set forth in the count of which the defendant was convicted ... by its nature [ ] presented a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2, comment. (n. 2) (Nov. 1990). While the district court's examination of the underlying conduct has an intuitive appeal in the distressing circumstances of this case, this court has recently held that the language of § 4B1.2 forecloses such an "inquiry into the specific circumstances surrounding a conviction," and limits the sentencing court's "factual inquiry to those facts charged in the indictment." *United States v. Johnson,* 953 F.2d 110, 113 (4th Cir.1991). In this case, the indictment fails to charge any conduct beyond the mere possession of firearms, and *Johnson* expressly holds that a § 922(g) offense—absent aggravating circumstances charged in the indictment—is not a "crime of violence" for purposes of § 4B1.1. *953 F.2d at 114. See also* U.S.S.G. § 4B1.2, comment. (n. 2) (Nov. 1991) ("The term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon."). Thus, we vacate Samuels' sentence insofar as it rests upon the application of § 4B1.1.

### B.

■ We cannot agree, however, with Samuels' contention that he does not qualify as an "armed career criminal" under § 4B1.4. Unlike the career offender provision, the armed career criminal provision does not require that the instant offense be a "crime of violence." The sentence enhancements of § 4B1.4 apply to a defendant who satisfies the statutory requirements of 18 U.S.C. § 924(e). U.S.S.G. § 4B1.4(a). Under the terms of that statute, an armed career criminal is a person who possesses a firearm in violation of § 922(g) and has three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Samuels concedes that his prior felony riot offense is a "violent felony" and that his two drug offenses were "serious drug offenses," but argues that the

two drug offenses should be treated as a single conviction since they were consolidated and a concurrent sentence was imposed. Thus, Samuels argues that he is one short of the three predicate convictions necessary to qualify as an armed career criminal.

We disagree. Nothing in § 924(e) or the Guidelines suggests that offenses must be tried or sentenced separately in order to be counted as separate predicate offenses. *See United States v. Bolton,* 905 F.2d 319, 323 (10th Cir.1990) (four robberies tried together constitute separate convictions); *United States v. Wallace,* 889 F.2d 580, 584 (5th Cir.1989) (prior convictions arising from same judicial proceeding and resulting in concurrent sentences were nonetheless separate convictions under 18 U.S.C. § 924(e)(1)). The only requirement is that the predicate offenses be "committed on occasions different from one another," 18 U.S.C. § 924(e)(1), and Samuels' three offenses plainly meet that standard: Samuels committed the felony riot offense on November 30, 1985, and committed the drug felonies (which involved different people) on December 11, 1985, and December 12, 1985. Where this requirement is met, the courts have consistently declined to impose additional barriers to sentencing under § 4B1.4. *See, e.g., United States v. Mason,* 954 F.2d 219, 221 (4th Cir.1992) ("[T]he statute does not require a conviction for one predicate crime before the next predicate crime is committed."); *United States v. Schieman,* 894 F.2d 909, 912 (7th Cir.1990) (statute does not require that predicate offenses be adjudicated separately in order to qualify as separate convictions).

### C.

■ We thus remand to the district court for resentencing pursuant to § 4B1.4. Under that provision, Samuels' offense level is the greatest of:

(1) the offense level applicable from Chapters Two and Three; or

(2) the offense level from § 4B1.1 (Career Offender) if applicable; or

(3) (A) 34, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence ...; or

(B) 33, otherwise.

U.S.S.G. § 4B1.4(b). In this case Samuels' offense level is set by subsection (3) since the offense level under that subsection is greater than the offense level applicable from Chapters Two and Three and since the career offender provision is inapplicable. Samuels contends that, on remand, the district court is bound to apply an offense level of 33 under § 4B1.4(b)(3)(B). In Samuels' view, our holding that possession of a firearm is not a "crime of violence" under the career offender provision forbids application of the base level of 34 under § 4B1.4(b)(3)(A). Again we disagree. The trigger to application of the base level of 34 under the armed career criminal provision is not a finding that possession of a firearm *is* a "crime of violence," but a finding that the firearm was *used* "in connection with a crime of violence." Such an inquiry into how the firearm was used necessarily requires the sentencing court to consider the factual circumstances surrounding the § 922(g) offense, and the trial testimony of the victims of counts one and two conclusively established that Samuels used the silver handgun "in connection with a crime of violence."

Thus, § 4B1.4 sets Samuels' offense level at 34 and criminal history category at VI. *See* U.S.S.G. § 4B1.4(c)(2) (establishing a criminal history category of VI where the defendant "used ... the firearm or ammunition in connection with a crime of violence"). Courts have held that the adjustments in Chapter 3 of the Guidelines are generally inapplicable to the offense levels set by the career offender and armed career criminal provisions. *See United States v. Thomas,* 894 F.2d 996, 997 (8th Cir.1990); *United States v. Cruz,* 882 F.2d 922, 924–26 (5th Cir.1989); *United States v. Huff,* 873 F.2d 709, 713–14 (3d Cir.1989); *United States v. Alves,* 873 F.2d 495, 497–98 (1st Cir.1989). Exceptions to this rule are specifically noted in the Guidelines. *See, e.g.,* U.S.S.G. §§ 4B1.1, 4B1.4 (each directing the sentencing court to decrease

the offense level by 2 levels if the § 3E1.1 adjustment for acceptance of responsibility applies); U.S.S.G. § 4B1.4(b)(1) (permitting an alternative calculation using the offense level applicable from Chapters Two and Three). None of those adjustments would appear to apply here, so the sentencing range applicable to Samuels (at offense level 34 and criminal history category VI) is 262–327 months.

### IV.

For the foregoing reasons, we affirm Samuels' conviction, but we vacate his sentence and remand for resentencing consistent with this ruling.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.