993 F.2d 1539
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donnie Orville BUNDICK, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
James Everette Bundick, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Marcia Ann Senior, Defendant-Appellant.
 Nos. 92-5314, 92-5323, 92-5324.
 United States Court of Appeals,
Fourth Circuit.
 (CR-91-105-R) Argued: February 5, 1993
Decided: June 8, 1993
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge.
 Sarah Elizabeth Powell, Student Counsel, Glenn, Flippin, Feldmann & Darby, Roanoke, Virginia, for Appellant Donnie Bundick.
 Paul H. Anderson, Carter, Brown & Osborne, P.C., Roanoke, Virginia, for Appellant James Bundick.
 Irving Ray Byrd, Jr., Bounds & Dorsey, P.C., Roanoke, Virginia, for Appellant Senior.
 Stephen Urban Baer, Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 Harwell M. Darby, Jr., Glenn, Flippin, Feldmann & Darby, Roanoke, Virginia, for Appellant Donnie Bundick.
 E. Montgomery Tucker, United States Attorney, Roanoke, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before RUSSELL and HALL, Circuit Judges, and PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Donnie O. Bundick, James E. Bundick, and Marcia A. Senior were convicted of conspiracy to possess with the intent to distribute more than 50 grams of a mixture or substance containing cocaine base ("crack"). See 21 U.S.C. § 846. The Bundicks also were convicted of the substantive offense of possession with the intent to distribute less than 5 grams of crack, see 21 U.S.C. § 841, and Senior was convicted of possession with the intent to distribute more than 50 grams of crack, see 21 U.S.C. § 841, and using a firearm during and in relation to a drug trafficking crime. See 18 U.S.C.s 924(c).
 
 
 2
 On appeal, Donnie Bundick claims that the district court abused its discretion in trying him in absentia. James Bundick argues that he was prejudiced and denied a fair trial by his brother's absence. James Bundick further contends that the district court abused its discretion by denying his motion to sever under Fed. R. Crim. P. 14. Finally, James Bundick and Senior challenge the sufficiency of the evidence supporting their convictions.
 
 
 3
 For the reasons set forth below, we reverse the judgment of conviction of Donnie Bundick, but affirm the judgments of conviction of James Bundick and Marcia Senior.
 
 BACKGROUND
 
 4
 In late May 1991, a confidential informant alerted members of the vice squad that a group of individuals was distributing substantial quantities of crack in the 1200 block of Lafayette Boulevard in Roanoke, Virginia. After corroborating this information, authorities directed confidential informants, using marked money, to make a series of controlled purchases of crack at residences located at 1205 and 1211 Lafayette Boulevard. On May 30, 1991, authorities obtained and executed valid search warrants for those premises.
 
 
 5
 The search of the residence located at 1205 Lafayette yielded, among other things, approximately 150 grams of crack, a loaded .9 millimeter handgun with additional rounds of ammunition, approximately $1800 in cash and handscales. Police found this contraband in an upstairs bedroom in which Senior lived and to which she had the only key. Co-defendants Phillip and Diane Randolph owned this residence. The search of 1211 Lafayette, the residence of the Bundicks, also bore fruit. When executing the warrant, police found Donnie Bundick standing in his yard next to a small plastic bag containing small amounts of crack. Police next discovered 3.3 grams of crack wrapped in a paper towel and placed in a knot hole of a tree located in front of the residence, and also recovered $804 in cash from James Bundick's sock. Police later determined that $50 of this amount consisted of the marked bills used by the confidential informants in making the controlled purchases.
 
 
 6
 On July 19, 1991, a federal grand jury returned a four-count indictment: Count One charged Senior, the Bundicks, the Randolphs, and another defendant, Garfield Grant, with conspiracy to possess with the intent to distribute more than 50 grams of crack, in violation of 21 U.S.C. §§ 846 and 841. Count Two charged Grant and Senior with possession with the intent to distribute more than 50 grams of crack, in violation of 21 U.S.C. § 841. Count Three charged Grant and Senior with using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Count Four charged the Bundicks with possession with the intent to distribute less than 5 grams of crack, in violation of 21 U.S.C. § 841.
 
 
 7
 The Randolphs pleaded guilty to the conspiracy count and agreed to testify at trial. Subsequently, the grand jury returned a superseding indictment to clarify the dates of the conspiracy and to add Daphine Parris as a defendant to Counts One and Two. Parris also pleaded guilty and agreed to testify at trial.
 
 
 8
 All defendants except Grant, who was and remains a fugitive, were present at arraignment and at pre-trial proceedings and were advised of the trial date. Jury selection was scheduled to begin on November 25, 1991. That morning, Donnie Bundick, who had been released on bond, telephoned court personnel and advised them that he was on his way to court. However, he never arrived, and the court issued a bench warrant for his arrest and continued the trial until January 27, 1992. On that date, Donnie Bundick was still at large. Over the objection of Donnie Bundick's counsel, the district court granted the government's motion to try Donnie Bundick in absentia . After a three-day trial, the jury convicted Senior and the Bundicks as charged.[1] This appeal followed.
 
 DISCUSSION
 
 9
 1. The Trial In Absentia of Donnie Bundick .
 
 
 10
 It is well-established that a defendant has a constitutional right to be present at every stage of trial. See, e.g., Diaz v. United States, 223 U.S. 442 (1912). Under certain circumstances, however, that right may be waived. Rule 43 of the Federal Rules of Criminal Procedure provides in relevant part:
 
 
 11
 (a) Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
 
 
 12
 (b) Continued Presence Not Required. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,
 
 
 13
 (1) is voluntarily absent after the trial has commenced. ...
 
 
 14
 Fed. R. Crim. P. 43 (emphasis added). On appeal, Donnie Bundick contends, among other things, that the plain language of Rule 43 precludes a finding that he voluntarily waived his right to be present at trial because he absconded before trial and, therefore, was not "initially present" when trial began. Under these circumstances, he argues that the district court abused its discretion by trying him in absentia.
 
 
 15
 At the time the district court exercised its discretion to proceed to trial in Donnie Bundick's absence, several courts of appeals, including this court, had rejected the plain language argument that Bundick advances, namely that Rule 43 forbids the trial in absentia of defendants not present at the beginning of trial. See, e.g., United States v. Muzevsky, 760 F.2d 83, 84 (4th Cir. 1985); Government of the Virgin Islands v. Brown, 507 F.2d 186, 189 (3d Cir. 1975); United States v. Tortora, 464 F.2d 1202, 1208 (2d Cir.), cert. denied, 409 U.S. 1063 (1972). Instead, the prevailing rule in this circuit was that "a defendant may waive his right to be present at the commencement of his trial just as effectively as he can waive his right to be present at later stages of the proceedings." United States v. Peterson, 524 F.2d 167, 184 (4th Cir. 1975), cert. denied, 423 U.S. 1088 (1976).
 
 
 16
 In Crosby v. United States, 113 S. Ct. 748 (1993), however, decided during the pendency of this appeal, the Supreme Court of the United States rejected the interpretation of Rule 43 that permitted the trial in absentia of a defendant absent at the start of trial, and accepted the plain meaning argument now advanced by Bundick. Like the present case, Crosby involved a defendant who, after attending all pretrial proceedings and learning of the trial date, voluntarily fled before trial and was tried and convicted in absentia. Reversing Crosby's conviction, the Supreme Court held that "[t]he language, history, and logic of Rule 43 support a straightforward interpretation that prohibits the trial in absentia of a defendant who is not present at the beginning of trial." Id. at 753.
 
 
 17
 The Court observed that the plain distinction between the consequences of flight before trial and flight during trial was intended by the drafters of Rule 43 and is justified by, among other things, the practical reality that "the defendant's initial presence [at trial] serves to assure that any waiver is indeed knowing." Id. at 752. As the Court explained, "[i]t is unlikely ... 'that a defendant who flees from a courtroom in the midst of a trial-where judge, jury, witnesses and lawyers are present and ready to continue-would not know that as a consequence the trial could continue in his absence.' " Id. (citations omitted). Accordingly, in light of Crosby, the conviction of Donnie Bundick must be reversed.[2]
 
 
 18
 James Bundick argues that his conviction also must be reversed because Donnie Bundick's absence prejudiced him in preparing a defense. Because it appears that James failed to raise this objection before the district court, we need not consider this argument on appeal. See, e.g., Singleton v. Wulff, 428 U.S. 106, 120 (1976). Even if the argument were properly before us, however, it would be unavailing. As the government points out, James Bundick does not claim that his brother would have testified on his behalf, much less that he would have given exculpatory testimony. Indeed, James Bundick offers no explanation whatsoever of how his defense was hampered. These unsupported claims of prejudice made by James Bundick are therefore without merit.
 
 
 19
 2. James Bundick's Motion to Sever.
 
 
 20
 James Bundick next contends that the district court abused its discretion in denying his motion for severance under Fed. R. Crim. P. 14. Specifically, he argues that he was prejudiced by a joint trial because he was named in only two counts of the four count indictment and the jury was exposed to evidence of crimes unrelated to his alleged wrongdoing. This argument is unpersuasive.
 
 
 21
 Because misjoinder of defendants is prejudicial per se, we first consider whether the James Bundick was properly joined as a defendant in the underlying indictment. See, e.g., United States v. Brugman, 655 F.2d 540, 542 (4th Cir. 1981). It is well established that "[b]arring special circumstances, individuals indicted together should be tried together." Id. Under Fed. R. Crim. P. 8(b), "defendants may be charged in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." The rule also provides that "defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." Id. (emphasis added).
 
 
 22
 Here, all defendants were charged with conspiracy in Count One of the superseding indictment. The short answer to James Bundick's claim is that, although he was not named in Counts Two and Three of the superseding indictment, the substantive crimes alleged in those counts occurred during the course of the conspiracy and were, in fact, sufficiently related to it such that joinder of the defendants was proper under Rule 8(b). See Brugman, 655 F.2d at 543; see also United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir. 1986) (observing that when indictment charges conspiracy, the general rule is that coconspirators should be tried together).
 
 
 23
 Since joinder was proper under Rule 8(b), we next consider whether the district court abused its discretion in denying the motion for severance. Fed. R. Crim. P. 14 grants district judges discretion to order separate trials for defendants whose joinder in a single trial, though proper under Rule 8(b), may nonetheless be prejudicial. See, e.g., Spitler, 800 F.2d at 1271; Brugman, 655 F.2d at 543. However, " 'severance will not be granted when the claim is based on the disparity of evidence adduced against individual defendants without a strong showing of prejudice.' " Brugman, 655 F.2d at 543 (citations omitted). Thus, "to be entitled to a severance, a defendant must show more than 'merely that a separate trial would offer him a better chance of acquittal.' " Spitler, 800 F.2d at 1271 (quoting United States v. Parodi, 703 F.2d 768, 780 (4th Cir. 1983)). Rather, the defendant must show that he or she was deprived of a fair trial and suffered a miscarriage of justice. See, e.g., United States v. Samuels, 970 F.2d 1312, 1314 (4th Cir. 1992); Brugman, 655 F.2d at 543.
 
 
 24
 Our review of the record convinces us that James Bundick cannot meet this heavy evidentiary burden. Not only would much of the evidence admitted against Senior have been admissible at a separate trial to show the nature of the conspiracy with which James Bundick was charged, but, as demonstrated below, the evidence adduced against James was more than ample to sustain his convictions. Under these circumstances, it cannot be said the distinct court abused its discretion in denying the motion for severance.
 
 
 25
 3. Challenges to the Sufficiency of the Evidence.
 
 
 26
 James Bundick and Senior challenge the sufficiency of the evidence supporting their respective convictions. Defendants bear a heavy burden because a reviewing court must sustain their convictions if, viewing the evidence in the light most favorable to the government and drawing all permissible inferences and credibility determinations in its favor, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also United States v. Aragon, 983 F.2d 1306, 1308 (4th Cir. 1993); United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). Appellants' challenges are addressed in turn.
 
 
 27
 A. Challenges to the Conspiracy Convictions .
 
 
 28
 To establish a conspiracy under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt (1) an agreement between two or more persons to violate the federal controlled substances laws and (2) the defendant's willful joinder in that agreement. See, e.g., United States v. Campbell, 980 F.2d 245, 249 (4th Cir. 1992); United States v. Clark, 928 F.2d 639, 641-42 (4th Cir. 1991). Proof of a conspiracy, and of a defendant's participation in it, may be established entirely by circumstantial evidence. See, e.g., Giunta, 925 F.2d at 764; United States v. Morrow, 914 F.2d 608, 612 (4th Cir. 1990). Moreover, it is not necessary that each co-conspirator know all the details of the unlawful plan or the identity of every other co-conspirator. See, e.g., Morrow, 914 F.2d at 612 (citation omitted); see also United States v. Maldonado-Rivera, 922 F.2d 934, 962 (2d Cir. 1990), cert. denied, 111 S. Ct. 2811 (1991). Rather, it is sufficient to show that a defendant knew of the essential nature of the conspiracy and took action indicating his or her participation in it. See, e.g., Morrow, 914 F.2d at 612 (citation omitted); United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984), cert. denied, 469 U.S. 1105 (1985).
 
 
 29
 Considering the applicable legal standard, the challenges to the sufficiency of the evidence supporting the conspiracy convictions are unpersuasive. The government's evidence at trial showed that beginning in April or May 1991, Senior and several unindicted coconspirators began traveling frequently from Washington, D.C. to Roanoke to distribute crack. This group later was joined by defendant Grant. Soon after their arrival in Roanoke, these individuals met Donnie Bundick and made arrangements to stay at Bundick's house during their trips to Roanoke. In exchange for lodging, Donnie Bundick was paid in cash or an equivalent amount of crack cocaine that he could and frequently did sell to, among others, the Randolphs. Moreover, testimony from the Randolphs clearly established that Donnie Bundick and Senior worked together in a narcotics distribution scheme. Although Senior claims that the testimony of the government witnesses was unworthy of belief, the jury obviously found the testimony more credible than that of Senior's lone witness, and "an appellate court will not second guess" a jury's credibility determinations. United States v. Stratton, 779 F.2d 820, 828 (2d Cir. 1985), cert. denied, 476 U.S. 1162 (1986); see also United States v. Russell, 971 F.2d 1098, 1109 (4th Cir. 1992) (observing that the task of courts reviewing sufficiency of the evidence is not "to make judgments about the credibility of the witnesses."), cert. denied, 113 S.Ct. 1013 (1993).
 
 
 30
 Likewise, although James Bundick had been released from state prison only one week before his arrest on the underlying indictment, the government adduced ample evidence linking him to the narcotics distribution scheme alleged in the superseding indictment. Parris testified that, during the week before James Bundick's arrest, she bought crack from him on three separate occasions. Further testimony established that when some of James Bundick's crack was stolen, he repaid his brother for the loss, thereby permitting the jury to conclude that Donnie Bundick supplied James with crack to distribute and that the brothers were working together. Finally, on the day of his arrest, police discovered money in James Bundick's sock that had been used to make the controlled purchases at the Bundick residence in the days preceding the May 30 raid. Although a defense witness testified that James Bundick could have won the money playing cards with certain unindicted co-conspirators, the jury plainly was entitled to disbelieve this explanation.
 
 
 31
 Considering the evidence in the light most favorable to the government and drawing all permissible inferences in its favor, there was more than sufficient evidence for a rational jury to conclude that James Bundick and Senior knew of the conspiracy and willfully participated in it.
 
 
 32
 B. James Bundick's Conviction for Possession With Intent to Distribute.
 
 
 33
 In executing the search warrant at the Bundicks' residence, police found 3.3 grams of crack wrapped in a paper towel and placed in the knot hole of a tree located near, but not on, the Bundicks' property. On appeal, James Bundick argues that, because the area in which he and his brother lived was an open air drug market, there was insufficient evidence for the jury to infer that he possessed the drugs found in the tree. This argument is unpersuasive.
 
 
 34
 To sustain a conviction for possession of narcotics with the intent to distribute, the government must prove beyond a reasonable doubt that the defendant (1) knowingly (2) possessed a controlled substance (3) with the intent to distribute it. See, e.g., 21 U.S.C. § 841(a)(1); United States v. Samad, 754 F.2d 1091, 1096 (4th Cir. 1984). "Actual possession of the drug is not required." Samad, 754 F.2d at 1096. Rather, the government can sustain its burden of proof by showing that the defendant constructively possessed the narcotics by exercising, or having the power to exercise, dominion or control over the contraband. E.g., id.; Collazo, 732 F.2d at 1205. Actual or constructive possession can be established by direct or circumstantial evidence. E.g., United States v. Garcia, 917 F.2d 1370, 1376 (5th Cir. 1990).
 
 
 35
 Under this standard, and viewing the evidence in the light most favorable to the government, the evidence was sufficient to sustain the James' conviction under 21 U.S.C. § 841(a)(1). Government witness Daphine Parris testified that the Bundicks typically wrapped their cocaine base in paper towels. Testimony from Parris and Phillip Randolph further showed that the Bundicks often hid their contraband outdoors. In particular, Randolph testified that Donnie Bundick had explained that he often hid crack in trees because police "always look down and never look up." This testimony provides a sufficient basis for the jury to have concluded that James Bundick possessed the narcotics found in the tree adjacent to 1211 Lafayette.
 
 
 36
 C. Senior's Conviction Under 18 U.S.C. § 924(c).
 
 
 37
 During the search of 1205 Lafayette, police discovered in Senior's bedroom, to which she had the only key, approximately 150 grams of crack, almost $1800 cash, drug paraphernalia, and a loaded .9 mm handgun with extra ammunition. Evidence at trial established that the drugs in the bedroom were Senior's and that she had hidden them in the wall vent. The gun was located behind the headboard of Senior's bed. On appeal, Senior contends that there was insufficient evidence to support her conviction under 18 U.S.C. § 924(c) because the evidence did not establish that she knew the gun was there or that she had any connection to it. Senior's argument is without merit.
 
 
 38
 Title 18 U.S.C. § 924(c) mandates a five-year sentence for a person who "uses" a firearm during and in relation to a drug trafficking crime. To "use" a firearm for purposes ofs 924(c), a defendant need not actually fire or brandish the weapon. "Rather, 'it is enough if the firearm is present for protection and to facilitate the likelihood of success [of the drug trafficking crime], whether or not it is actually used.' " United States v. Paz, 927 F.2d 176, 179 (4th Cir. 1991) (citation omitted); see also United States v. Medina, 944 F.2d 60, 66 (2d Cir. 1991) (observing that "use" is established under § 924(c) when weapon is strategically placed and available for use to protect contraband) cert. denied, 112 S.Ct. 1508 (1992); United States v. Townley, 929 F.2d 365, 368 (8th Cir. 1991) (holding that gun's accessibility and close proximity to drugs was sufficient to establish "use" under § 924(c)). Moreover, proof that a defendant constructively possessed the weapon under such circumstances is sufficient to establish "use" 3805 25 1 for purposes of § 924(c). See, e.g., Paz, 927 F.2d at 179; United States v. Long, 905 F.2d 1572, 1576-77 (D.C. Cir.) (observing that constructive possession under circumstances indicating that the weapon facilitates the drug trafficking crime sufficient to establish use) (Thomas, J.), cert. denied, 498 U.S. 948 (1990).
 
 
 39
 Here, viewing the evidence in the light most favorable to the government, a reasonable jury readily could have inferred, based on the close proximity of the weapon to the drug paraphernalia and to the large quantity of crack concealed in Senior's bedroom, that Senior strategically hid the gun to make it available to protect her contraband and thereby to facilitate her illicit narcotics activity, which was established by credible evidence. See, e.g., Paz, 927 F.2d at 179. Moreover, because Senior lived in the bedroom where the contraband was found and possessed the only key to that room, the jury had an ample basis to conclude that she constructively possessed the weapon. See, e.g., United States v. Anderson, 881 F.2d 1128, 1141 (D.C. Cir. 1989) (evidence that defendant resided in apartment with weapon and had only key sufficient to allow reasonable inference that defendant possessed gun found in bag in the middle of the room); United States v. Matra, 841 F.2d 837, 842 (8th Cir. 1988).
 
 
 40
 D. Senior's Conviction for Possession With Intent to Distribute.
 
 
 41
 At trial, the evidence that Senior was selling crack cocaine came largely from the testimony of Parris and the Randolphs, Senior's coconspirators. Senior asserts that these witnesses were unworthy of belief, and were contradicted by the testimony of Senior's lone witness, who claimed that Senior was merely a user, not a dealer. As discussed in connection with Senior's challenge to her conspiracy conviction, the jury found the government's witnesses credible, and we will not second-guess the jury's acceptance of this corroborated testimony. See, e.g., Russell, 971 F.2d at 1109. Moreover, based on the large quantity of crack found in Senior's apartment, approximately 150 grams, and the handscales, the jury could have inferred that Senior was holding the contraband to distribute, not merely for personal use. See, e.g., United States v. Bell, 954 F.2d 232, 235 (4th Cir. 1992) (holding that 13 plus grams of crack was quantity sufficient to support inference of intent to distribute).
 
 CONCLUSION
 
 42
 We have considered appellant's remaining arguments and find them to be without merit. For the foregoing reasons, the judgments of conviction of James Bundick and Marcia Senior are affirmed. The judgment of conviction of Donnie Bundick is reversed and the case is remanded for a new trial.
 
 
 43
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 
 
 [1]
 Donnie Bundick was apprehended by federal authorities in Florida on January 28, 1992
 
 
 [2]
 We reject the government's suggestion at oral argument that Donnie Bundick's telephone call to the clerk of court before trial commenced satisfied the presence requirement of Rule 43 as interpreted by Crosby