19 F.3d 12
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Oscar ELLIS, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
Oscar ELLIS, Jr., Defendant-Appellee.
 Nos. 92-5860, 92-5897.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Jan. 25, 1994.
Decided: March 8, 1994.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk; John A. MacKenzie, Senior District Judge. (CR-92-114)
 William P. Robinson, Jr., Robinson, Madison, Fulton & Anderson, Norfolk, VA, for appellant.
 Kenneth E. Melson, U.S. Atty., Vincent L. Gambale, Asst. U.S. Atty., Alexandria, VA, for appellee.
 E.D.Va.
 AFFIRMED IN PART AND VACATED AND REMANDED.
 Before MURNAGHAN and LUTTIG, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Oscar Ellis, Jr., was convicted by a jury of being a felon in possession of a firearm, 18 U.S.C.A. Secs. 922(g)(1), 2 (West Supp.1993), and received a sentence of sixty-three months. He appeals his conviction, alleging that statements he made following his arrest were improperly admitted. The government also appeals, contending that the district court erred in refusing to sentence Ellis as an armed career criminal under 18 U.S.C.A. Sec. 924(e). We affirm Ellis' conviction; however, we vacate his sentence, and remand for resentencing.
 
 
 2
 In June 1992, Ellis rented Room 144 at the Bayshore Inn in Norfolk, Virginia, for a week. His girlfriend and another woman also occupied the room. After a few days, because of excessive noise and traffic in and out of the room, and Ellis' refusal of routine housekeeping services, the motel manager told Ellis he would not be allowed to stay past the end of the week. On the morning of June 15, the manager became suspicious that the room was being used for prostitution and told Ellis that his room was about to be searched by police. In fact, the manager had not called the police. However, Ellis immediately vacated the room.
 
 
 3
 When the manager subsequently entered the room, he found a shotgun and a cellular phone, and he then called the police. Before the police came, Ellis called the motel and said he was not coming back, and that he wanted to send someone over to pick up the shotgun and the phone. He was told that he would have to pick up his belongings in person.
 
 
 4
 Norfolk Police Officer Frank Reese arrived shortly afterward, and retrieved from Ellis' room a shotgun which had been shortened, but appeared to be of legal length, a box of shotgun shells, and the phone. After finding out that Ellis was from Tennessee, and obtaining a description of him and his car, Reese went to look for Ellis at a nearby motel where the motel personnel thought he might be found. Reese intended to let Ellis know his shotgun was in police possession, and was also suspicious that Ellis might be involved in some criminal activity.
 
 
 5
 Officer Reese saw Ellis in the parking lot of the motel as he drove up. Reese approached Ellis, asked his identity, asked to see his identification, and briefly frisked him for weapons. Ellis was cooperative. He agreed to walk over to the police car to talk to Reese, and Reese ran a computer check on Ellis' name which showed that he had several felony convictions. Reese then asked Ellis to sit in the back of the police car. After initially refusing, and being frisked again, Ellis complied. Reese testified at the suppression hearing that at this point Ellis was not free to leave, and that he could not have left had he wished because the rear car door had no inside handle.
 
 
 6
 Reese asked Ellis where he was staying. Ellis said he was in Room 144 at the Bayshore Inn. He then volunteered that the shotgun in the room belonged to his girlfriend. Agents from the Bureau of Alcohol, Tobacco and Firearms (ATF) were summoned, and the investigation was turned over to them. They measured the shotgun barrel and found that it was long enough to be legal. Ellis consented to a search of Room 144 and was then transported to the ATF office. Before being questioned, and before he was informed of his Miranda* rights, Ellis volunteered that he had given his girlfriend the money to buy the shotgun in Tennessee and had been with her when she bought it. Ellis repeated these statements after being advised of his rights, and added that he had bought the ammunition. He would not say how the gun came to be in Virginia.
 
 
 7
 Before his trial, Ellis moved unsuccessfully to suppress his statements as the fruit of an unlawful arrest. He argued that Reese had no basis for detaining him even after Reese learned that Ellis was a convicted felon, because he had disclaimed ownership of the shotgun. Rejecting his argument, the district court found that Ellis was taken into custody when Officer Reese asked him to sit in the police car. It found that Reese had probable cause to arrest Ellis at that point, because (1) Reese knew Ellis was a convicted felon, (2) Reese could reasonably assume the shotgun belonged to Ellis rather than one of the women sharing his room, and (3) Reese knew Ellis had asserted ownership of the shotgun when he called to say he wanted to send someone to pick it up.
 
 
 8
 On appeal, Ellis contends that he was unlawfully detained before Officer Reese learned through the computer search that he was a convicted felon. He argues that the manner in which he was "approached, searched, and told to wait, clearly established a seizure of his person with no legal basis," chiefly because he was not told he was free to leave. Because Ellis did not challenge the validity of his arrest on this ground in the district court, his argument is reviewed for plain error. United States v. Bornstein, 977 F.2d 112, 115 (4th Cir.1992). The government argues that Ellis was not seized before the computer search, and that, if he was, it was merely a permissible brief detention on reasonable suspicion.
 
 
 9
 Ellis did not testify at the suppression hearing, and Reese was not asked whether Ellis consented to the initial pat-down. If Ellis did not consent to the first weapons frisk, we must find that it was a seizure within the meaning of the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 16 (1968). However, had Ellis contested the validity of this limited seizure, the district court could have found it justified as protective search conducted during an investigative stop supported by reasonable suspicion. Id. at 30.
 
 
 10
 A Terry stop and frisk may be conducted when an officer has a reasonable suspicion, supported by articulable facts, that a person is engaged in criminal activity and may be armed and dangerous. Adams v. Williams, 407 U.S. 143, 146 (1972); United States v. Reedy, 990 F.2d 167, 168 (4th Cir.), cert. denied, 62 U.S.L.W. 3249 (U.S.1993). Reese had reasonable suspicion to frisk Ellis when he entered the Sea King Motel parking lot because he knew that Ellis had possessed a firearm at the Bayshore Motel and had also behaved in such a suspicious manner that the motel manager wanted him out of the motel. Ellis' sudden departure when he was told that police were going to search his room provided a further basis for reasonable suspicion that Ellis might be involved in some criminal activity. It was also reasonable for Reese to suspect that Ellis might possess other weapons. Therefore, the court did not plainly err in failing to suppress Ellis' later statements on this ground.
 
 
 11
 After Ellis' conviction, the government recommended that he be sentenced as an armed career criminal under Sec. 924(e). Ellis made no objection. He had been convicted of armed robberies committed against three different victims on January 24, 1973, January 26, 1973, and January 30, 1973, and of assault with intent to commit voluntary manslaughter in 1978. However, the district court sua sponte expressed unhappiness with the mandatory fifteen-year sentence. The court eventually held that Ellis had committed all three robberies during one criminal episode stretching over several days, and that the three convictions should count as one prior conviction. Ellis was sentenced to just over five years.
 
 
 12
 A defendant convicted of violating Sec. 922(g)(1) qualifies as an armed career criminal if he has three prior convictions which are violent felonies or serious drug offenses. The prior offenses must be "committed on occasions different from one another." This language was added to Sec. 924(e) in 1988 to clarify Congress' intention that the mandatory minimum sentence should not be applied where a defendant has committed several prior felonies at the same time "such as the robbery of six people at once. See United States v. Blackwood, 913 F.2d 139, 146 (4th Cir.1990) (mandatory minimum did not apply to defendant separately charged with possession of marijuana in truck and in motel room on same date). Before the amendment, numerous circuit courts debated the question, generally concluding that the mandatory minimum sentence should only be triggered by multiple convictions arising from distinct criminal episodes. See United States v. Pedigo, 879 F.2d 1315, 1317 (6th Cir.1989); United States v. Schoolcraft, 879 F.2d 64, 74 (3d Cir.), cert. denied, 493 U.S. 995 (1989); United States v. Towne, 870 F.2d 880, 889 (2d Cir.), cert. denied, 490 U.S. 1101 (1989); United States v. Herbert, 860 F.2d 620, 622 (5th Cir.1988), cert. denied, 490 U.S. 1070 (1989); United States v. Gillies, 851 F.2d 492, 497 (1st Cir.), cert. denied, 488 U.S. 857 (1988); United States v. Harden, 846 F.2d 1229, 1232 (9th Cir.), cert. denied, 488 U.S. 910 (1988); United States v. Rush, 840 F.2d 580, 581 (8th Cir.1988); United States v. Petty, 828 F.2d 2, 3 (8th Cir.1987), cert. denied, 486 U.S. 1057 (1988) (Petty II ); United States v. Greene, 810 F.2d 999, 1000 (11th Cir.1986).
 
 
 13
 The district court decided that Ellis' three prior armed robbery convictions were part of a single episode, and should be counted as one conviction. It relied on the pre-amendment cases listed above, Blackwood, and decisions of this Court which do not address the issue. United States v. Samuels, 970 F.2d 1312, 1315 (4th Cir.1992); United States v. Luskin, 926 F.2d 372, 375 (4th Cir.), cert. denied, 60 U.S.L.W. 3258 (U.S.1991).
 
 
 14
 However, we are aware of no authority which supports the view that one "occasion," or criminal episode, may encompass robberies committed against different victims on different dates. The statute specifies only that the offenses must have been committed on occasions different from one another. Ellis' three prior convictions for robberies committed in 1973 against different victims on January 24, 26, and 30, clearly meet the requirements of the statute. See United States v. Rideout, 3 F.3d 32 (2d Cir.) (two break-ins on same day twelve miles apart during crime spree were separate offenses), cert. denied, 62 U.S.L.W. 3376 (U.S.1993); United States v. Brady, 988 F.2d 664, 668-70 (6th Cir.) (robberies thirty to forty-five minutes apart were separate offenses), cert. denied, 62 U.S.L.W. 3248 (U.S.1993). The district court therefore erred in finding that Ellis was not subject to the fifteen-year mandatory minimum sentence and in sentencing him to sixty-three months.
 
 
 15
 Accordingly, we affirm Ellis' conviction, but vacate his sentence and remand for the limited purpose of imposing the mandatory minimum fifteen-year sentence required by Sec. 924(e). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 16
 CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED.
 
 
 
 *
 Miranda v. Arizona, 384 U.S. 436 (1966)