39 F.3d 1178
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Savino BRAXTON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Linwood Rudolph WILLIAMS, a/k/a Rudi Williams, a/k/a Lenwood
Williams, Defendant-Appellant.
 Nos. 91-5162, 92-5023.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 2, 1994.
Decided Oct. 31, 1994.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Frank A. Kaufman, Senior District Judge. (CR-90-135-K)
 Savino Braxton, Linwood Rudolph Williams, appellants pro se.
 Katharine Jacobs Armentrout, Asst. U.S. Atty., Baltimore, MD, for appellee.
 D.Md.
 AFFIRMED.
 Before HALL and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Linwood Rudolph Williams and Savino Braxton were among twenty-three individuals named in a thirty-six count indictment alleging a conspiracy to distribute heroin and cocaine in violation of 21 U.S.C.A. Sec. 846 (West Supp.1994); among other charges, the indictment also contained substantive violations for possession and distribution of heroin and cocaine in violation of 21 U.S.C. Sec. 841(a)(1) (1988), use of firearms in the course of drug trafficking crimes in violation of 18 U.S.C.A. Sec. 924(c) (West Supp.1994), money laundering in violation of 18 U.S.C.A. Sec. 1956(a)(1)(B)(i) (West Supp.1994), and unlawful possession of firearms in violation of 18 U.S.C.A. Sec. 922(g)(1) (West Supp.1994). The Appellants now raise a number of issues stemming from their convictions and sentences in a joint trial. For the reasons stated below, we reject the merits of those arguments and affirm the judgment of the district court.
 
 
 2
 * From 1986 until his arrest in April 1990, Linwood Williams headed a large-scale drug distribution organization in the Baltimore, Maryland area. The operation included many of his friends and family, such as his nephew, Namond Williams, who, in turn, brought his acquaintances into the operation.
 
 
 3
 In 1989, the Drug Enforcement Administration ("DEA"), the Internal Revenue Service ("IRS"), and the Baltimore City Police Department ("BCPD") undertook a combined investigation of this drug operation. The investigation, as shown by the evidence presented at trial, revealed that Williams headed a wholesale heroin distribution organization which supplied street-level dealers in the Baltimore area. Williams would negotiate for raw heroin from importers and direct others to actually pick up the shipments and deliver payments. Simultaneous to Williams's distribution scheme, Namond Williams ran a street-level heroin distribution organization, and as a part of this operation, he opened a car wash, "Namond's Polish King," in East Baltimore.
 
 
 4
 In the spring of 1990, officers raided several of the organization's "stash" houses. Furthermore, the police arrested several individuals and recovered numerous bags of heroin, vials of crack cocaine, handguns, and large sums of cash.
 
 
 5
 On April 17, 1990, investigators executed twenty-six warrants and arrested numerous individuals. At Williams's home, they found a large amount of money, a gun, and drug-packaging paraphernalia. At other apartments they recovered sixty-two bags of pure cocaine, 27.42 grams of 46 percent pure heroin in raw form, 17.29 grams of 3 percent heroin, 122 bags of heroin, 63 vials of cocaine, $2744 in cash and a variety of distribution supplies.
 
 
 6
 On December 10, 1990, trial commenced for Braxton, Williams, and twelve other Defendants. After a three-month trial, the case went to the jury. The jury found Williams guilty of conspiring to distribute heroin, possessing with intent to distribute heroin, money laundering, and being a felon in possession of a handgun. The jury found Braxton guilty of possessing with intent to distribute heroin on April 4, 1991.[1] After conducting intensive sentencing hearings, the trial court sentenced Williams to life imprisonment and 130 years of imprisonment, running consecutively. The district court sentenced Braxton to 225 months of incarceration and three-years supervised release. Williams and Braxton timely appealed. This Court consolidated the cases on appeal.
 
 II
 
 7
 Braxton alleges that there was insufficient evidence that he possessed with intent to distribute heroin on April 4, 1990. In evaluating the sufficiency of evidence to support a conviction, we view the evidence in the light most favorable to the government, and determine if any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). Furthermore, we accord the benefit of all reasonable inferences to the government. Tresvant, 677 F.2d at 1021.
 
 
 8
 The evidence at trial demonstrated that, on April 4, 1990, Braxton called Williams and stated "I, I got to see you." Later that day, Williams called Braxton and told him he was going to the bank and that he could meet after that. Braxton drove to Williams's home, met Williams at the front door, and entered the house. After Braxton and Williams left the house, Braxton walked to the rear of his car and opened the trunk. Williams took a leather pouch out of his car and gave it to Braxton.
 
 
 9
 Braxton drove to an apartment building and entered the building carrying the pouch. About five minutes later, a cab pulled in front of the building. Both the driver and the passenger went to the trunk of the cab and removed a large white bag. The passenger then entered the building following Braxton's same path. A few minutes later, the passenger left the building still carrying the same bag. Braxton left the apartment still carrying the pouch.
 
 
 10
 The next day, April 5, Williams called Braxton and told him that, "Hey, I need to holler at you, right? ... Cause I can't really, I can't dance[2] at all, you know." Braxton responded, "Okay, alright, alright ... Well just, I just put it all together. I take it back over there."
 
 
 11
 On April 6, Williams called his nephew and instructed him to "bring them, ah, them bald-headed tires, so the boy can shoot past there." That same day, Braxton called Williams and told him he would take care of things. Braxton then met with Williams's nephew and left with a bulge under his jacket.
 
 
 12
 During a search of Braxton's house on April 17, 1990, agents found 27.12 grams of heroin, an Ohaus triple beam balance scale, plastic baggies, glassine bags, clear capsules, and a bottle of quinine.
 
 
 13
 Braxton argues that there is insufficient evidence that he possessed heroin because there was not direct evidence that he possessed heroin on April 4. The nature of the drug involved in a drug trafficking offense may be established by circumstantial evidence and scientific evidence is not required. United States v. Scott, 725 F.2d 43, 44 (4th Cir.1984). Furthermore, the identity of heroin can be established by circumstantial evidence. United States v. Cirillo, 499 F.2d 872, 888 (2d Cir.), cert. denied, 419 U.S. 1056 (1074).
 
 
 14
 The circumstantial evidence demonstrated that Braxton possessed heroin. It is uncontroverted that Williams dealt only in heroin and that Braxton had heroin at his residence on April 17, 1990. More importantly, given the sequence of events, Braxton's conduct on April 4, and the government's expert testimony about the nature of the April 5 and 6 telephone conversations, it is reasonable to infer that Braxton delivered heroin on April 4.[3]
 
 III
 
 15
 Braxton asserts that his indictment was inadequate because the evidence at trial differed materially from the facts alleged in the indictment. We find that the indictment contained "the elements of the offense charged, fairly informed defendant of the charge, and enabled the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." United States v. Daniels, 973 F.2d 272, 274 (4th Cir.1992), cert. denied, 61 U.S.L.W. 3499 (U.S.1993). Accordingly, we reject this claim.
 
 IV
 
 16
 Braxton also alleges that the district court erred in denying his motion for a severance. In reviewing the matter for an abuse of discretion, United States v. Lane, 474 U.S. 438, 449-50 n. 12 (1986), we find that the district court did not err in denying Braxton's motion for a severance. See United States v. Samuels, 970 F.2d 1312, 1314 (4th Cir.1992).
 
 V
 
 17
 Braxton claims that the district court made several errors with respect to jury instructions. Given the instructions in this case, we find no reasonable likelihood that the jury misconstrued the instructions. See Boyde v. California, 494 U.S. 370, 380 (1990). Furthermore, the district court properly refrained from defining reasonable doubt. See United States v. Reives, 15 F.3d 42, 45-46 (4th Cir.), cert. denied, 62 U.S.L.W. 3825 (U.S.1994).
 
 VI
 
 18
 Braxton alleges that the prosecutor engaged in misconduct by making inflammatory and unduly prejudicial remarks during closing argument. Because the remarks were not objected to, we review them for plain error. United States v. Mitchell, 1 F.3d 235, 239 (4th Cir.1993). We have reviewed the disputed comments and find that the comments were proper. See United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir.1983), cert. denied, 466 U.S. 972 (1984). Moreover, even if we discerned any errors, they certainly did not affect Braxton's substantial rights. United States v. Olano, 61 U.S.L.W. 4421, 4424 (U.S.1993). Accordingly, this claim is meritless.
 
 VII
 
 19
 Braxton alleges two sentencing errors: that the district court erred in calculating the quantity of heroin for sentencing purposes and that he was improperly subjected to a sentencing enhancement under 21 U.S.C. Sec. 851. Both allegations are factually incorrect.
 
 
 20
 Because no drugs were seized at the time of the offense, it was agreed by the government, the Defendant, and the district court that the base offense level should be set at the lowest offense level established by the Sentencing Guidelines. This was not error. See United States v. Johnson, 943 F.2d 383, 387-88 (4th Cir.) (trial court should approximate quantity of drugs where there is not a seizure), cert. denied, 60 U.S.L.W. 3435 (1991). Furthermore, pursuant to the United States Sentencing Commission, Guidelines Manual Sec. 4B1.1 (Nov.1991) ("U.S.S.G."), the district court properly increased his base level from 12 to 32 because he was a career offender.
 
 VIII
 
 21
 Williams attacks the cross-examination of two witnesses, alleging that the prosecutor engaged in misconduct by making inflammatory and unduly prejudicial remarks.
 
 
 22
 With regards to the impeachment of Witness Dennis, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Accordingly, the cross-examination was proper. See Fed.R.Evid. 403.
 
 
 23
 With regards to the impeachment of Witness Hargis, the prosecution impeached Hargis by establishing that Hargis had told an officer that Williams was responsible for a murder during a drug transaction and that Williams often held organization meetings where he stated that his drug trade would not be stopped by the police even if it meant that he had to kill the officers.[4] After Hargis denied making these statements, the officer, Detective Dominick, testified that Hargis made these statements.
 
 
 24
 Williams attacks the cross-examination on two grounds: it was impermissible hearsay and it was an improper use of prior inconsistent statements. The testimony was not hearsay because it was not offered for the truth of the matter asserted. See Fed.R.Evid. 801(d). Furthermore, the cross-examination was not an improper use of prior inconsistent statements because Hargis was given an opportunity to deny the statements and defense counsel cross-examined Detective Dominick. Fed.R.Evid. 613(b); see also United States v. Cobb, 905 F.2d 784, 787 n. 5 (4th Cir.1990), cert. denied, 498 U.S. 1049 (1991); United States v. Daniele, 886 F.2d 1046, 1052-53 (8th Cir.1989).
 
 
 25
 In addition, Williams concedes that counsel did not object to the impeachment. Accordingly, even if the impeachment was error, it was not plain error. See United States v. Brewer, 1 F.3d 1430, 1435 (4th Cir.1993).
 
 IX
 
 26
 Williams also alleges that the court erred in not instructing the jury on the limited use of the prior inconsistent statements. Because Williams did not request a limiting instruction, we review the omission for plain error. See United States v. Mark, 943 F.2d 444, 449 (4th Cir.1991) (burden on defendant to request instruction). Given the overwhelming evidence of Williams's guilt, the omission did not affect the outcome of the court's proceedings. Olano, 61 U.S.L.W. at 4424.
 
 X
 
 27
 Williams alleges three sentencing errors: his sentence was enhanced for obstruction of justice even though he never intended to perjure himself, his sentence was enhanced for possession of a weapon even though he was acquitted of possessing a firearm in relation to a drug trafficking offense, and his sentence was enhanced for his role in the offense.
 
 
 28
 Williams's assertions are meritless. He concedes that he perjured himself. We agree and find that the district court's factual determina tion of perjury was not clearly erroneous. See United States v. Riley, 991 F.2d 120, 125 (4th Cir.), cert. denied, 62 U.S.L.W. 3319 (U.S.1993). Furthermore, an enhancement pursuant to U.S.S.G. Sec. 2D1.1(b)(1) may be based on conduct for which the defendant was acquitted. See United States v. Nelson, 6 F.3d 1049, 1057 (4th Cir.1993), cert. denied, 62 U.S.L.W. 3792 (U.S.1994); United States v. Romulus, 949 F.2d 713, 716-17 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3719 (1992). The district court's determination that a firearm was present was not clearly erroneous. See United States v. Apple, 915 F.2d 899, 914 (4th Cir.1990).
 
 
 29
 Finally, reviewing for clear error the factual determination that Williams was an organizer or leader, see United States v. Sheffer, 896 F.2d 842, 846 (4th Cir.), cert. denied, 498 U.S. 838 and 498 U.S. 968 (1990), the district court did not err in enhancing his sentence pursuant to U.S.S.G. Sec. 3B1.1.
 
 
 30
 Williams's and Braxton's claims are meritless. Accordingly, we affirm the district court. We dismiss Braxton's motion to expedite as moot, and we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.[5]
 
 AFFIRMED
 
 
 [1]
 The jury also found four other Defendants guilty of possessing with intent to distribute heroin and cocaine, conspiring to distribute heroin, and money laundering. This Court affirmed their convictions in United States v. Williamston, Nos. 91-5163, 92-5018, 92-5031, 92-5044 (4th Cir. Dec. 21, 1993) (unpublished)
 
 
 [2]
 A government expert testified that "can't dance" and "bald-headed tires" was street slang for "poor quality of heroin."
 
 
 [3]
 There is further evidence that the pouch contained heroin. The evidence at trial established that Braxton attempted to purchase heroin from Williams in February. In a taped phone call, one of Williams's distributors told a purchaser that it "came close but it wasn't you, know, worth nothing." Both men dealt only in heroin
 
 
 [4]
 We grant Williams's "Motion to Brief a Fifth Amendment Violation" in relation to this testimony and have considered the brief he submitted with the motion
 
 
 [5]
 We also deny Braxton's motion to deconsolidate his appeal